FELÍCITA ESTHER BLANCO RIVERA, representada por su padre con patria potestad MANUEL BLANCO AVILÉS, demandante y apelante, *v.* MUNICIPIO DE MAYAGÜEZ, representado por su Alcalde, HON. ALFONSO GONZÁLEZ MARTÍNEZ, hoy MANUEL MARÍN, demandado y apelado.

Núm. 7908.—*Sometido:* Febrero 13, 1940. *Resuelto:* Julio 26, 1940.

*Enrique Báez García,* abogado de la apelante; *Oscar Souffront,* abogado del apelado.

El Juez Asociado Señor Wolf emitió la opinión del tribunal.

El día 7 de julio de 1936, entre 9 y 10 de la noche, Felícita Esther Blanco, demandante en este caso, regresaba a su hogar en compañía de su hermana y de su cuñado. Al atravesar el puente conocido por "Dos Marinas" que se extiende sobre el Río Yagüez y conecta la calle Comercio con el barrio "Marina Septentrional", la referida demandante oyó que un automóvil se acercaba, abandonó el centro del puente, por donde ella venía caminando en unión a otros y se echó hacia el lado derecho, donde había un viaducto para peatones. Luego de dar 5 ó 6 pasos se precipitó a través de una abertura y cayó en el fango que había en la parte inferior del puente, recibiendo varias lesiones, principalmente en la nariz y otras menores en el muslo y en el pie. La demandante

instó demanda contra el Municipio de Mayagüez y reclama $2,000 en concepto de daños y perjuicios.

En su demanda la demandante alega que el accidente se debió exclusivamente a la negligencia del municipio, entre otras cosas porque el municipio, a pesar del mal estado en que estaba, permitió que el puente permaneciera abierto al tránsito, con un agujero o abertura que medía 13 pulgadas de ancho por 37 de largo, producido por una tabla que se había salido del piso del viaducto oeste de dicho puente, y a través del cual podía caerse cualquier persona que caminara por el mismo. Además, porque a pesar del hecho de estar el puente en tan mal estado, el municipio no suspendió el tránsito de personas por el mismo ni puso un aviso junto al sitio de peligro para advertir a los peatones que existía tal abertura, ni colocó durante la noche una luz roja ni ninguna otra para advertir a las personas que se acercaran que el paso por dicho lugar era peligroso.

En los párrafos 7, 8 y 9 de su demanda la demandante alegó que debido a la referida negligencia del municipio ella había sufrido serias lesiones que describe así: fractura de los huesos nasales; herida irregular profunda en la base de la nariz y región frontal; neumonía, contusión cerebral y heridas leves en el muslo derecho y en el peine del pie izquierdo; que como consecuencia de dicha fractura y herida profunda la demandante ha sufrido física y moralmente, ya que la fractura le impide la libre respiración y le ha deformado la nariz para el resto de su vida.

El demandado contestó la demanda admitiendo algunas de las alegaciones y negando otras. Negó que el municipio tuviera conocimiento de que se hubiera caído una tabla del piso del puente; alegó que tan pronto como tuvo conocimiento de que dicha tabla se había caído o faltaba procedió a reponer la misma. Que tal conocimiento no lo tuvo hasta el día 8 de julio, 1936, o sea hasta el día después del accidente. El demandado alega por información que cree cierta, que dicha tabla faltó en el viaducto indicado el mismo día en que sos-

tiene la demandante que ocurrió el accidente, y no antes, y asimismo que no había razón alguna para que la tabla faltara de dicho sitio, y que si la misma faltó en dicho lugar, se debió al acto de alguna persona o personas o a algún accidente que el demandado no había podido precisar. Alegó, además, el demandado, que si no suspendió el paso de personas por dicho viaducto, ni puso señal alguna en la proximidad del sitio de peligro, ello se debió al hecho de ignorar la existencia de la falta de tal tabla en dicho viaducto.

Como defensa especial alegó el demandado que aún si en alguna forma o concepto fué negligente al permitir que en el viaducto faltase una tabla en la noche del 7 de julio de 1936, y si con motivo de tal negligencia ocurrió el accidente, también medió negligencia contribuyente de la demandante al no tomar las precauciones necesarias al cruzar el puente y no observar el estado en que se encontraba el mismo en su lado oeste, habiendo sido tal negligencia contribuyente la causa única e inmediata del accidente alegado en la demanda.

El caso fué a juicio el día 21 de septiembre de 1937. La demandante ofreció prueba tendente a demostrar que en el mismo puente habían ocurrido otros accidentes. La declaración de Julio Guenard, al efecto de que había sufrido un accidente tres meses antes al de Felícita, no fué admitida en evidencia porque el demandado se opuso fundado en que tal declaración era demasiado remota. Francisco Lojo y Hilton Cancel declararon sobre los accidentes que cada uno de ellos había tenido en el mismo puente "Dos Marinas".

La otra prueba ofrecida por la demandante tendió a demostrar que el puente se hallaba en mal estado; que había estado en malas condiciones durante muchos años; que el municipio tenía conocimiento de ello. A ese efecto la demandante introdujo la declaración de Tomás Ramírez, ingeniero civil y Superintendente de Obras Públicas del Municipio de Mayagüez.

Este testigo manifestó que el puente era reparado continuamente. Al preguntársele cuáles eran las condiciones del

puente, contestó que se hallaba en mal estado; que el centro del puente se utiliza para el tránsito y los lados para los peatones; que él lo examina constantemente; que no le faltaban tablas; que siempre que alguien se queja el puente es reparado; que las reparaciones consisten en reponerle las tablas que se hallan en mal estado; que algunas de las tablas estaban podridas pero que no parecían estarlo a primera vista. En la repregunta manifestó que el puente estaba en malas condiciones. Que hay un rótulo que dice: "Peligro —Puente en malas condiciones—Prohibido el tráfico pesado." Que el puente no ha sido cerrado porque una vez trataron de hacerlo así, y los vecinos del barrio y ciertos comerciantes se quejaron; que los rótulos fueron puestos antes del accidente; que han estado allí por espacio de tres años; que dichos rótulos no tenían luces pero que estaban colocados cerca del poste de la luz eléctrica; que hay un empleado a cargo de la inspección del puente. Se le preguntó si el municipio tenía suficiente dinero para reconstruir el puente. La demandante objetó la pregunta y la corte declaró sin lugar la objeción. Se señala esto como error.

La prueba del demandado consistió en las declaraciones de Julio Piñán, Inspector de Obras Públicas, y de dos médicos. La declaración del Inspector de Obras Públicas tendió a demostrar que el puente estaba en buenas condiciones; que él lo examinó el día antes del accidente; que lo inspeccionaba cada ocho, quince o veinte días; que siempre que una persona se quejaba de que faltaba una tabla, procedían a reparar el puente. El testimonio de los doctores tendió a demostrar que la demandante no tenía fractura, neumonía ni concusión del cerebro. Su otro testigo fué Manuel Marín, Alcalde de Mayagüez. Ésta fué toda la prueba del demandado. Luego el juez hizo una inspección ocular del lugar del accidente.

La corte sentenciadora llegó principalmente a las siguientes conclusiones:

Que el municipio no tenía conocimiento al momento del

accidente de que faltaba la tabla ni de la existencia de la abertura producida por la remoción de la misma; que el demandado no es culpable de negligencia puesto que dicho puente fué inspeccionado el día antes del accidente por un empleado municipal y éste lo halló aparentemente en buenas condiciones; que se pusieron rótulos advirtiendo a los viandantes que debían tener cuidado al cruzar el puente; que nadie se quejó al municipio de que faltaba la referida tabla; que la demandante fué culpable de negligencia contribuyente al abandonar el centro del puente y dirigirse hacia el lado en que ocurrió el accidente, mientras que sus compañeros permanecieron en el centro del puente y no sufrieron lesiones de clase alguna; que la negligencia contribuyente había sido satisfactoriamente probada por el demandado; y finalmente, que las lesiones recibidas por la demandante no fueron probadas.

La corte inferior cita extensamente a McQuillin sobre Corporaciones Municipales para sostener su conclusión de que hubo negligencia contribuyente.

El 18 de mayo de 1938 la corte inferior dictó sentencia en contra de la demandante, quien apeló para ante este tribunal en junio 17, 1938, y ha señalado seis errores.

El primer señalamiento de error lee así:

"La Corte de Distrito de Mayagüez cometió error de derecho al no permitir las declaraciones de Nicolás del Valle, Julio Guenard e Hipólita Guenard sobre un accidente ocurrido a Julio Guenard con anterioridad al ocurrido a la demandante, sosteniendo que dicho accidente fué muy remoto."

Existen casos en que un accidente anterior tendería a demostrar que el acaecimiento del accidente específico debió haber sido previsto por el demandado. En otras palabras, si el municipio, con motivo de otros accidentes, pudo haber sabido que el puente estaba en mal estado en el lugar en que ocurrió el accidente o en otros sitios que estaban igualmente afectados, entonces se hubiera demostrado claramente la negligencia de parte del municipio. El apelado dice muy

acertadamente que si el objeto de la evidencia excluída era demostrar que la misma abertura a través de la cual cayó la apelante hubiera existido durante más de tres meses inmediatamente anteriores y que otras personas se habían caído por el mismo agujero, y que el municipio tenía conocimiento de esos accidentes, entonces el haber excluído esa evidencia hubiera sido un error. El apelado, sin embargo, insiste en que si se hubiera demostrado todo esto él no se hubiera opuesto a la admisión de esa prueba.

La apelante no nos convence de que la evidencia excluída hubiera arrojado alguna luz, por lo menos con respecto a la abertura en cuestión. En lo que a arrojar alguna luz sobre el mal estado del puente se refiere, tal vez habría alguna duda, mas dada la posición que asumiremos del accidente, la exclusión de las declaraciones de estos testigos no es de por sí motivo para que revoquemos el presente caso.

■ El segundo señalamiento de error lee como sigue:

"La Corte de Distrito de Mayagüez cometió error de derecho al permitir que el ingeniero municipal declarara que no existían fondos para reconstruir el puente sin apoyar dicha declaración en ninguna prueba documental."

El error fué cometido toda vez que resulta impertinente el hecho de si el municipio tenía o no suficientes fondos en aquel momento para reparar el puente, si al público se le permitía transitar por el mismo. Debe haber fondos disponibles en alguna forma o de lo contrario suspenderse el tránsito por el puente. Además, no insistimos demasiado en este segundo señalamiento toda vez que la sentencia debe ser revocada por el motivo principal.

Discutiremos el tercer señalamiento más tarde.

■ El cuarto señalamiento provee:

"La Corte de Distrito de Mayagüez cometió error al dictar sentencia declarando sin lugar la demanda por ser dicha sentencia contraria a la prueba practicada y a la preponderancia de la evidencia."

Podría decirse que éste es el señalamiento principal. Toda la prueba tiende a demostrar que el puente en cuestión

había estado en mal estado durante años y que el mismo debió haberse reparado, y hubo suficiente prueba ante la corte a ese efecto, aun si ella no podía tomar conocimiento judicial del hecho de que el puente estaba y había estado en muy malas condiciones; y de que las tentativas del ingeniero de hacer algunas pequeñas reparaciones aquí y allá de cuando en cuando no eran un cumplimiento suficiente por parte del municipio de su deber de mantener el puente en buen estado de reparación.

No trataremos de citar las declaraciones de los varios testigos. Mas el presente es casi un pleito—si no uno—de *res ipsa loquitur*. El puente estaba enteramente bajo el dominio del municipio.

■ El quinto señalamiento dispone:

"La Corte de Distrito de Mayagüez cometió error de derecho al resolver que la demandante es culpable de negligencia contributoria (*contributory negligence*)."

La teoría de la corte inferior, conforme la entendemos, es que la demandante caminaba por el centro de la carretera en un sitio seguro y lo abandonó para caminar por el viaducto porque se aproximaba un automóvil. Diremos que el municipio estaría impedido de suscitar este punto toda vez que el viaducto se suponía ser exclusivamente para los peatones y no hay el menor indicio en los autos de que la demandante Felícita Esther Blanco Rivera, o alguno de sus parientes, tenía conocimiento de que el viaducto se hallaba en mal estado. Si no estamos equivocados, para algún otro fin, el municipio o su letrado insisten en que la demandante y sus parientes debieron caminar por el viaducto y no por el centro del camino. A nuestro juicio la corte inferior cometió error al concluir que hubo negligencia contribuyente por parte de la demandante.

■ El sexto señalamiento se refiere a la negativa de la corte inferior a admitir fotografías del puente. Esto pudo haber sido un error, mas como hemos decidido revocar el

caso por otros fundamentos creemos innecesario entrar en la cuestión detalladamente.

Empero, fué un error por parte de la corte de distrito el no permitir que las fotografías rechazadas acompañaran la exposición del caso como *exhibits* para el supuesto error.

E tercer señalamiento es éste:

"La Corte de Distrito de Mayagüez actuó movida por pasión, prejuicio y parcialidad al declarar que no se probaron los daños y perjuicios alegados."

La corte resolvió que según el testimonio prestado por los doctores durante el juicio, la demandante sufrió, podría decirse, principalmente de una conmoción *(shock)* y que aunque hubo lesión de la nariz no hubo fractura.

No obstante la demandante misma declaró que sufrió considerablemente de las lesiones recibidas en la nariz y que a veces se le hacía difícil respirar debido a la fractura en el hueso nasal.

Es en verdad una fortuna para Felícita Esther Blanco que ella pueda volver a su condición normal. El Dr. Ramírez Cuerda, que la asistió, prestó testimonio significativo al efecto de que ella había recibido serias lesiones en la nariz y que padeció de la misma durante varios días.

En su consecuencia, la demandante tenía derecho a reclamar daños materiales.

De lo contrario, a no ser así, una persona en su estado, por razón de una caída sufriría de conmoción y posiblemente otras consecuencias. Bajo estas circunstancias las cortes de ordinario han concedido indemnización. Ésta puede que no sea alta.

La demandante reclamaba $2,000 así: $500 por dolores físicos y padecimientos y $1,500 por la fractura del hueso nasal y por la deformidad de la nariz. Creemos que $2,000 es demasiado pero que, bajo las circunstancias expuestas, debe concedérsele $1,000, más las costas, y se dictará sentencia a ese efecto.

El Juez Asociado Sr. De Jesús no intervino.