ELISA DAVIDSON, demandante y apelada, *v.* H. I. HETTINGER & Co., y EL GOBIERNO DE LA CAPITAL, demandados y apelantes.

Núm. 8611.—*Sometido:* Abril 1, 1943. *Resuelto:* Julio 7, 1943.

*James R. Beverley, R. Castro Fernández* y *José López Baralt,* aboga-
dos de Hettinger & Co. y *Juan Valldejuli Rodríguez,* abogado del
Gobierno de la Capital, apelantes; *Daniel Pellón, Jr.* y *Juan To-
más Peñagarícano,* abogados de la apelada.

EL JUEZ ASOCIADO SEÑOR TODD, JR., emitió la opinión del tri-
bunal.

El día 4 de marzo de 1940, como a las tres de la tarde,
Elisa Davidson caminaba por la acera de la calle Figueroa,
parada 18½, Santurce, dirigiéndose a la Avenida Ponce de
León. Al pasar frente al edificio de Miranda Hnos., tropezó
con un hueco que había en la acera y sufrió una caída como
consecuencia de la cual se fracturó el fémur derecho y ha
quedado permanentemente lisiada. Dicho hueco fué cavado
por H. I. Hettinger & Co. a virtud de un contrato con el Go-
bierno de la Capital para la instalación de un alcantarillado
de aguas negras en la sección que comprende e incluye la
calle Figueroa. La causa de acción en este caso se basó en
la negligencia de la demandada H. I. Hettinger & Co. en de-
jar la excavación sin protección y a sabiendas de que la acera
era un sitio abierto al tránsito público, y en la negligencia
del codemandado, Gobierno de la Capital, por tener conoci-
miento de las obras que se realizaban y consentir que Het-
tinger & Co. dejara el hueco sin protección alguna. La Corte
de Distrito de San Juan declaró con lugar la demanda con-
tra ambos demandados y le concedió a la demandante $4,000

de indemnización y además las costas y $150 como honorarios de abogado.

Los demandados apelaron separadamente ya que en la corte inferior en la misma forma radicaron sus alegaciones y comparecieron a juicio representados por sus respectivos abogados. Ante esta corte, sin embargo, los demandados apelantes radicaron su alegato conjuntamente y a la vista del caso compareció únicamente el abogado de H. I. Hettinger & Co. Aun cuando algunas de las defensas son comunes a ambas apelaciones, el propio abogado de Hettinger & Co. admitió en la vista oral que de prosperar los errores primero y cuarto que corresponden a la alegación de dicho apelante de que la obra había sido entregada y aceptada por el Gobierno de la Capital y que esto conllevaba la exoneración de responsabilidad en cuanto a Hettinger, en ese caso, el único a defenderse de la negligencia imputada sería el Gobierno de la Capital. No obstante existir en el caso esta posibilidad y habiendo defensas encontradas entre los codemandados apelantes, dicho Gobierno quedó a merced de la representación de Hettinger ante esta Corte Suprema no obstante constar con abogado pagado por los contribuyentes para defender sus intereses.

Los apelantes alegan que la corte inferior cometió error al declarar probada la existencia de la depresión en la acera de la Calle Figueroa allá para el 4 de marzo de 1940, y al hacer a Hettinger responsable de la misma; al no declarar que el accidente fué uno casual, desgraciado y fortuito, en la ocurrencia del cual para nada intervino la conducta de Hettinger y del Gobierno de la Capital; al no declarar que la demandante fué negligente en forma contribuyente; al sostener que la existencia de una leve depresión (dos pulgadas en el caso de autos) en una acera de la ciudad, hace responsable al Municipio y a la parte que supuestamente ocasionara la misma; al hacer responsable a Hettinger a pesar de aceptar como buena la teoría de que una vez termi-

nado y aceptado el trabajo, la responsabilidad del contratista cesa; y al conceder a la demandante una compensación de $4,000 con más los honorarios de sus abogados.

Los tres primeros señalamientos envuelven primordialmente un ataque a la apreciación de la prueba por la corte inferior.

■ Los hechos que el juez sentenciador consideró probados fueron los siguientes:

"La corte estima probado que entre Quiñones Hettinger & Co. y el Gobierno de la Capital se celebró un contrato a virtud del cual la primera se comprometió a construir para la segunda un alcantarillado para aguas negras dentro de la ciudad de San Juan. Posteriormente, la actual demandada, la corporación H. I. Hettinger & Co. y con el consentimiento del municipio se hizo cargo de la realización de la referida obra y comenzó a efectuar sus trabajos allá por el mes de enero de 1939. El trozo de la Calle José R. Figueroa comprendido entre las Avenidas Fernández Juncos y Ponce de León estaba incluído en el proyecto a realizarse por la corporación Hettinger. El trabajo se efectuaba abriéndose una zanja por el centro de la calle donde se instalaba la tubería principal y de allí se hacían acometidas que partían hacia las distintas casas de la referida calle. Con ese propósito también se hacían zanjas para colocar allí los tubos que habían de recoger las aguas de las casas para llevarlas al tubo principal. La prueba de los demandados tendió a demostrar que, para la instalación de los tubos de las casas a la calle, no se abrían zanjas en las aceras sino en casos excepcionales pero que la regla general era que se cavaban túneles por debajo del pavimento de la acera. Hubo un pequeño conflicto en la prueba sobre si se abrió o no se abrió una zanja en la Calle Figueroa y en el sitio donde acaeciera el accidente objeto de este pleito. Apreciando la prueba en conjunto nos inclinamos a creer que la acera fué rota y abierta una zanja que no fué cubierta con concreto sino rellenada con arena suelta y con pedazos de concreto viejo sacados de la acera. Allí quedó un hueco o depresión, de superficie y contornos irregulares, como de 30 pulgadas de largo, 24 de ancho y 2 de profundidad. Estos trabajos eran inspeccionados por los ingenieros del Municipio, demandado. El día 4 de marzo de 1940 y como de 3 a 4 p.m., la demandante, que a la sazón contaba 59 años, caminaba por esa acera en dirección de sur a norte de la Avenida Fernández Juncos a la Ponce de León, conversando con su amiga Eufrasia Igaravídez,

cuando al llegar al hueco o depresión referida, introdujo allí el pie izquierdo, tropezó con algo en el hueco sufriendo entonces una caída tan violenta que no pudo levantarse teniendo que ser recogida por otras personas y llevada al Hospital San José que quedaba allí muy cerca del sitio. Como consecuencia de la caída sufrió la deman- dante una fractura completa del cuello del fémur derecho que la mantuvo hospitalizada y recluída en cama, por más de tres meses, completamento cnyesada; tenía que permanecer en una posición muy incómoda, boca arriba, sin poder moverse y la pierna en una posición violenta. Declaró el Dr. Seín que esta clase de lesiones no sanan permanentemente y que la soldadura de los huesos es por lo regular incompleta. Fué la opinión del perito que ella quedaría con una incapacidad parcial permanente y que la pierna fracturada quedaría más corta que la otra.''

Al dirimir el conflicto que existe en la prueba hizo cons- tar que daba entero crédito ''a los testigos desinteresados de la demandante, Eufrasia Igaravídez, Luis Ramos, que trabajó con Hettinger & Co., y Juan Pérez, empleado de Mi- randa Hnos.'', y resolvió que Hettinger & Co. había incu- rrido en negligencia al permitir que sus empleados después de haber abierto la acera no la rellenaran con cemento y dejaran el hoyo cubierto con tierra y pedazos de concreto. Asimismo resolvió que el Gobierno de la Capital fué negli- gente al permitir que el defecto en la acera permaneciera sin arreglar cerca de un año sin que las autoridades municipa- les hicieran nada a pesar de tener ingenieros encargados de inspeccionar las obras realizadas por Hettinger & Co.

Hemos leído detenidamente la extensa transcripción de la evidencia presentada por las partes y somos de opinión que no se cometieron los errores mencionados, ya que las conclusiones de hecho a que llegó la corte sentenciadora es- tán ampliamente sostenidas por la prueba y nada surge de ella que nos autorice a resolver que cometió error al dirimir a favor de la demandante el conflicto que en dicha prueba existe. Que el hueco fué abierto en la acera lo demuestra, no sólo la declaración de los testigos de la demandante, sino la fotografía presentada por la demandada (*Exhibit* ''A''),

habiendo sido Hettinger & Co. la única entidad que realizó obras en dicha calle. Es realmente algo extraordinario que los demandados se empeñen en negar un hecho tan palpable como la existencia del hoyo en la acera y al mismo tiempo arguyan que por su tamaño y profundidad no son responsables de negligencia. Que la demandante tropezó y cayó como consecuencia de haber metido uno de sus pies en la tierra y concreto suelto que cubría el hueco, no importa que fuera su pie derecho o el izquierdo, es evidente, como también lo es la fractura y los daños que sufrió.

■■ Pasamos a considerar ahora si, como sostienen los apelantes, son erróneas las conclusiones legales a que llegó la corte sentenciadora.

En primer término se alega que la demandante incurrió en negligencia contribuyente: 1, al no fijarse en el hueco y 2, al no caminar por otra calle que no fuera la de Figueroa si ella sabía que en ésta se estaban realizando obras, como declaró.

Si bien la demandante declaró que sabía que en la calle Figueroa se habían estado realizando obras del alcantarillado, nada hay en la prueba que demuestre que ella conocía con anterioridad al día del accidente, el hueco que había en la acera. La calle estaba abierta al tránsito público. Lo que se exige de un viandante que tiene derecho a transitar por una calle abierta al público es que observe un cuidado razonable dentro de todas las circunstancias concurrentes. No tiene que ir mirando continuamente hacia el suelo para evitar todo posible accidente debido a la negligencia de una tercera persona o del municipio, y tampoco tiene necesariamente que transitar por otra calle que aquélla en que ocurrió el accidente, aun cuando conozca las condiciones peligrosas de la misma. El dejar de tomar estas precauciones no constituye *per se* negligencia contribuyente. 7 McQuillin Municipal Corporations (2d ed.) 274, Sec. 3014; *Montval Vda. de Cuevas* v. *López Hnos.*, 41 D.P.R. 431; *Cote* v. *City*

*of Hartford,* 23 A. (2d) 868 (Conn., 1942) ; *Emmey* v. *Stanley Co. of America,* 10 A. (2d) 795 (Pa., 1940). En el *Restatement* sobre *Torts,* volumen 2, *Negligence,* Sec. 473, se expone la regla en esta forma:

"Si la negligencia del demandado ha hecho imposible el ejercicio de un derecho o privilegio por el demandante a menos que él a sabiendas se exponga al riesgo de un daño personal, el demandante no es culpable de negligencia contribuyente al así hacerlo a menos que el riesgo sea irrazonable."

El viandante no incurre en negligencia a menos que conozca no sólo el defecto que existe en la calle o acera sino también su carácter peligroso para que pueda resolverse, como cuestión de ley, que no tomó las razonables precauciones para evitar el daño. Como se dijo en el caso de *Nicholson* v. *City of South Omaha,* 77 Neb. 710 , 110 N. W. 558: " . . . No es el conocimiento que tenga el demandante del defecto en la acera o calle lo que impide que recobre, sino su falta de tener el cuidado que un hombre prudente ejercitaría tomando en consideración el peligro."

Véase además la sección 466 del Restatement, supra, sus comentarios y aplicación, tal y como los discutimos en nuestra opinión en el caso de *Font* v. *Viking Construction Corporation,* 58 D.P.R. 689, 698.

No puede sostenerse, de acuerdo con los hechos probados en este caso, que el riesgo que asumió la demandante al ejercitar su derecho a transitar por la calle Figueroa pueda calificarse de irrazonable. El carácter del hueco cubierto de tierra y cascajos que había en la acera no era tal que la pusiera a ella sobre aviso de su naturaleza peligrosa y que la obligara a tomar precauciones extraordinarias para evitar el daño que le sobrevino al caminar sobre el mismo. No cometió error la corte inferior al resolver que la demandante no incurrió en negligencia contribuyente.

■ Por el cuarto señalamiento los apelantes sostienen que la existencia de una leve depresión en una acera de la

ciudad no hace responsable al Gobierno de la Capital o a la parte que supuestamente ocasionó la depresión.

Los apelantes citan en su alegato muchos casos en los que las cortes han resuelto que depresiones de dos pulgadas o de mayor profundidad no son lo suficientemente peligrosas para que pueda hacerse responsable al municipio. Estos casos presentan situaciones distintas y sólo se resuelve en ellos que tomando en consideración las circunstancias concurrentes en cada caso en particular no hubo negligencia por parte del demandado.

Es cierto que la obligación de un municipio no es mantener sus calles y aceras en estado de completa perfección pues la ley sólo exige al municipio que las mantenga en condiciones de razonable seguridad ya que la corporación municipal no es un asegurador de los transeúntes. 7 McQuillin 6, Sec. 2902. Si una acera está en condiciones de razonable seguridad o no es una cuestión de hecho a ser resuelta por la corte de acuerdo con los hechos probados y al determinarlo en un caso como el de autos, se deben tomar en consideración, entre otras, las siguientes circunstancias: el ancho, largo y profundidad del hueco; el ancho de la acera; si la calle es una por la que transitan muchas personas; si el hueco es de tal naturaleza que no es claramente visible a los transeúntes que caminan con el cuidado razonable que anteriormente hemos mencionado. Empero, como se dijo en *Emmey* v. *Stanley Co.*, supra: " . . . ninguna regla definida o matemática puede establecerse en cuanto a la profundidad o tamaño de una depresión en una acera para hacer responsable al municipio . . . . de negligencia o de permitir su continuada existencia."

Un caso muy similar al de autos fué el de *Balkwill* v. *City of Stockton,* 123 Pac. (2d) 596 (Cal., 1942) en el cual a una señora de 59 años de edad se le concedieron $8,500 de indemnización por la fractura del cuello del fémur que sufrió como consecuencia de haberse caído en un hoyo que había

en una acera, que sólo medía de cuatro a cinco pulgadas de largo, dos pulgadas de ancho y de media a dos pulgadas de profundidad. La corte resolvió que si bien un municipio no es responsable por lesiones que resulten de pequeños defectos en las aceras, "el hoyo fué lo suficientemente grande para atrapar el tacón de un transeúnte y ocasionar un accidente serio. Demostró ser de hecho peligroso en este caso."

No es, por tanto, el elemento de la profundidad del hueco o de la depresión, como pretenden los apelantes, lo único que hay que considerar en estos casos sino todas las circunstancias concurrentes ya mencionadas. Así lo hizo la corte sentenciadora y no erró a nuestro juicio.

Arguyen los apelantes que el deber de una corporación municipal de mantener sus calles y aceras en condiciones de razonable seguridad es uno impuesto o reconocido por el derecho común como excepción a la regla de que en toda función gubernativa, para beneficio de la comunidad, dicha entidad no es responsable por la negligencia de sus agentes, y sostienen que "no rige en Puerto Rico el derecho común americano en un campo que está perfectamente cubierto por legislación insular, como lo está el campo de corporaciones municipales."

Este tribunal ha resuelto que cuando un municipio, en el ejercicio de sus funciones gubernamentales, ocasiona daños y perjuicios con motivo de la negligencia de sus funcionarios o empleados, no es responsable civilmente. *Villegas* v. *Municipio,* 19 D.P.R. 419; *Compañía Industrial* v. *Municipio de Aguadilla,* 47 D.P.R. 547: *Blanes* v. *Capital de Puerto Rico,* 57 D.P.R. 551; pero que cuando actúa en una función corporativa, sí es responsable. *Colón* v. *Gobierno de la Capital,* 57 D.P.R. 15. En el caso de *Villegas,* supra, se resolvió que la negligencia del conductor de una ambulancia dedicada a beneficencia municipal, siendo un servicio de caridad era uno de carácter gubernamental; en el de *Compañía Industrial,* supra, se resolvió que al operar el departamento de incendios

el municipio también actúa en dicha capacidad; y por último en el de *Blanes,* se resolvió que el servicio de limpieza pública es asimismo una función gubernativa. Por otra parte, en el de *Colón* v. *Gobierno de la Capital,* supra, resolvimos que en la explotación de un sistema de acueducto el municipio no ejerce función alguna gubernativa y sí corporativa.

Esta distinción entre funciones gubernativas y corporativas en relación con la responsabilidad de un municipio por daños causados por la negligencia de sus funcionarios o empleados ha dado motivo a severas críticas por autores de reconocida competencia en el estudio de la materia, recomendándose por ellos el que se haga responsable a los municipios en todos los casos en que se pruebe la negligencia. El motivo fundamental aducido es que el ciudadano no debe ser perjudicado por una ficción de ley tan tenue que hace una distinción entre la negligencia de un chófer municipal que al guiar un vehículo de un departamento, como el de incendios, no es responsable el municipio y sin embargo ese mismo chófer al guiar un vehículo del departamento del acueducto, bajo las mismas circunstancias de negligencia, hace responsable al municipio. Para un estudio bastante completo de la cuestión véase Borchard: *Governmental Liability in Torts,* 34 Yale Law Journal 129; *Distinction Between Governmental and Proprietary Functions of Municipal Corporations,* por Delmar W. Doddridge, 23 Mich. Law Rev. 325, y el muy reciente estudio *Municipal Tort Liability in Operation,* por Edgar Fuller y A. James Cassner, 54 Harv. Law Review 437.

Con razón a nuestro juicio, Borchard, en el artículo citado, dice que no existe razón aparente para sostener que las funciones públicas o gubernativas no pueden ser efectuadas debidamente a menos que el municipio sea inmune de responsabilidad por la negligencia de sus funcionarios. Por el contrario, sostiene ''que podría argüirse con más convicción que una mayor eficiencia y justicia podrían obtenerse al

equipararse el poder concedido con la responsabilidad exigida, y si esto no induce a un mayor respeto por la ley, por lo menos respondería más satisfactoriamente al sentido de justicia pública, si los daños causados al individuo por los actos torticeros de los agentes de la comunidad se reparten entre toda la comunidad, más bien que permitir que recaigan exclusivamente sobre la infortunada víctima''.

En relación con la reparación y mantenimiento de sus calles una minoría de las autoridades sostiene que es una función gubernamental y que el municipio no es responsable aun bajo la Ley Común en los Estados de Arkansas, California, Connecticut, Maine, Massachusetts, Michigan, New Jersey, Oregon, Rhode Island, South Carolina, Vermont, New Hampshire y Wisconsin. En algunos de estos Estados se han aprobado estatutos imponiendo o limitando la responsabilidad municipal en estos casos. Empero, en la mayoría de los Estados se sostiene la responsabilidad de los municipios en relación con accidentes ocurridos con motivo de la negligencia de sus funcionarios y empleados en el mantenimiento y reparación de las calles.

No tenemos duda de que en el mantenimiento de sus calles y vías de comunicación el municipio actúa en su capacidad gubernamental ya que ningún beneficio pecuniario obtiene, empero, no vemos razón poderosa alguna que impida que, consecuentes con nuestra aceptación de las doctrinas del derecho común sobre las actuaciones gubernamentales y corporativas de los municipios a que hemos hecho referencia, no debamos también aceptar y adoptar la excepción que a la primera de dichas doctrinas existe en el derecho común americano.

La razón por la cual una corporación municipal no es responsable cuando de funciones gubernamentales se trata es una de conveniencia pública. Esto no quiere decir que el derecho del ciudadano no exista. Sólo implica que al ciudadano se le niega, por razones de conveniencia pública, el

remedio que en otras circunstancias se le reconocería. La excepción que ha establecido el derecho común lo que hace es reconocer y conceder dicho remedio. En 7 McQuillin Municipal Corporations 10, Sec. 2902 se exponen más ampliamente las razones que han tenido las cortes para reconocer la excepción en esta forma:

"Se ha dicho generalmente que la responsabilidad surge por implicación de la naturaleza de la cuestión y los vastos poderes conferidos a tales corporaciones, incluyendo el control exclusivo de las calles. La razón adicional, según se expresa en algunas decisiones, es que el hacer y mejorar las calles y mantenerlas reparadas es una función ministerial y se refiere a intereses corporativos solamente.

"Además . . . en muchos casos (se dice) . . . que el deber de reparar las calles fué impuesto especialmente al municipio por estatuto. . . . También la responsabilidad por daños algunas veces se hace descansar en el hecho de que el control de las calles ha sido concedido al municipio por la legislatura, o que el deber estatutario de conservar las calles en reparación y libres de obstrucciones es un deber mandatorio y no discrecional."

Aun cuando la cuestión que discutimos no fué expresamente planteada en el caso de *Blanco* v. *Municipio de Mayagüez,* 57 D.P.R. 482, se resolvió que estando un puente enteramente bajo el dominio del municipio "las tentativas de su ingeniero de hacer algunas pequeñas reparaciones aquí y allá de cuando en cuando, no eran un cumplimiento suficiente por parte del municipio de su deber de mantener el puente en buen estado de reparación" y se revocó la sentencia que declaró sin lugar la demanda y se concedieron $1,000 de daños y perjuicios a la demandante que solamente sufrió serias lesiones en la nariz, de las que padeció varios días, como consecuencia de haberse caído por una abertura o agujero que había en una de las tablas del puente. Tácitamente se aplicó la regla que hace responsable a los municipios por la negligencia de sus funcionarios al no mantener debidamente reparado un puente municipal que forma parte de las vías de comunicación bajo su control al igual que las calles.

■ Arguyen, por último, los apelantes que no debe hacerse responsable a los municipios en casos de esta naturaleza porque debemos tomar conocimiento judicial de que los municipios en Puerto Rico están en estado de continua insolvencia y no podrán "sostenerse de tener que responder de un estado perfecto de todas sus calles y aceras".

Ya hemos dicho que al municipio no se le exige que tenga sus calles y aceras en un estado perfecto sino en uno de razonable seguridad y que no es por tanto un asegurador de los transeúntes. Ahora bien, el argumento de falta de fondos públicos para responder de cualquier sentencia adversa en un caso de esta naturaleza no es una defensa. La causa de acción que un demandante pueda tener en contra de un demandado, sea éste un particular, una corporación o un municipio, no depende de que el demandado tenga o no con qué satisfacer la sentencia que en su contra pueda dictarse. "La determinación de la suma [de la compensación], como cuestión legal, nunca depende de la capacidad de la demandada para pagar dicha suma . . .", se resolvió en el caso de *Flores* v. *Sucrs. de Pérez Hermanos,* 29 D.P.R. 1046, 1048, ratificado en *Vázquez* v. *Laugier,* 60 D.P.R. 414.

■ Por el quinto señalamiento se sostiene que la corte erró al hacer responsable a Hettinger a pesar de aceptar como buena la teoría de que una vez terminado y entregado el trabajo la responsabilidad del contratista cesa.

El error está basado en una disertación que, aunque muy interesante, constituye un *obiter dictum* de la corte inferior. Como cuestión de hecho la corte ya había resuelto que la obra no había sido entregada por Hettinger ni aceptada por el municipio, porque si bien ya no se trabajaba en la calle Figueroa y se estaban haciendo instalaciones en otros sitios, no fué hasta julio de 1940 (el accidente ocurrió el 4 de marzo de dicho año) que el trabajo fué aceptado formalmente, habiéndose probado además que la calle no estaba pavimentada, cuando de acuerdo con el contrato era obligación del

contratista el hacerlo. Estas conclusiones están ampliamente sostenidas por la prueba. Empero, la corte inferior innecesariamente *asumió* que las obras habían sido aceptadas y después de citar, entre otros, el bien conocido caso de *Winterbottom* v. *Wright*, 152 Eng. Report 402, en el que se originó la doctrina de la cesación de responsabilidad de un contratista para con terceras personas después que su trabajo ha sido aceptado, entró a considerar y aplicar a los hechos del caso de autos la excepción que a dicha doctrina existe en cuanto a la responsabilidad del contratista cuando èn su obra ha creado un estorbo público (*nuisance*).

Somos de opinión que aun cuando técnicamente pueda sostenerse que el error fué cometido carece de méritos pues como hemos dicho la prueba demostró que la obra no había sido entregada por Hettinger ni aceptada por el Gobierno de la Capital. Por tanto, no tenemos por qué entrar a considerar y resolver si la corte sentenciadora erró al decir que la depresión o hueco dejado en la acera constituyó un estorbo público.

El sexto error impugna la cuantía de la indemnización concedida, pero los apelantes se limitan a decir que lo dejan ''a la alta consideración de esta superioridad''. Nada, por tanto, alegan para sostener su impugnación. Tomando en consideración la naturaleza de las lesiones recibidas por la demandante y que sufre de una incapacidad parcial permanente, pues la pierna fracturada ha quedado más corta que la otra, somos de opinión que la suma de $4,000 concedida es razonable.

*Debe desestimarse el recurso y confirmarse la sentencia apelada.*

El Juez Presidente Sr. Del Toro no intervino.