## Melissa MONTAÑEZ MORALES, Plaintiff,

### v.

## MUNICIPALITY OF SAN JUAN, et al., Defendants.

### Civil No. 04–2378 (GAG).

United States District Court, D. Puerto Rico.

Aug. 13, 2008.

Jose Luis Fernandez–Esteves, San Juan, PR, for Plaintiff.

Juan B. Soto–Balbas, Margarita Cintron–Solla, Mercado & Soto, Luis G. Martinez–Llorens, San Juan, PR, for Defendants.

## OPINION AND ORDER

GUSTAVO A. GELPI, District Judge.

Plaintiff Melissa Montañez Morales ("Montañez") brings this diversity suit alleging that defendant, the Municipality of San Juan ("the Municipality"),[1] negligently maintained the intersection at Santa Cecilia Street and Esquilín Street in Santurce, Puerto Rico. The Municipality's negligence, Montañez alleges, resulted in a car accident that caused her injury. Presently before this court is the Municipality's motion for summary judgment (Docket No. 92). After reviewing the relevant facts and applicable law, the court **DENIES** the Municipality's motion.

## I. Summary Judgment Standard

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "An issue is genuine if it may reasonably be resolved in favor of either party at trial, and material if it posses[es] the capacity to sway the outcome of the litigation under the applicable law." *Iverson v. City of Boston*, 452 F.3d 94, 98 (1st Cir.2006) (alteration in original)

(citations and internal quotation marks omitted).

The moving party bears the initial burden to demonstrate the lack of evidence to support the non-moving party's case. *Celotex*, 477 U.S. at 325, 106 S.Ct. 2548. In order to defeat summary judgment, the non-moving party must "set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). If the court finds that some genuine factual issue remains the resolution of which could affect the outcome of the case, then the court must deny summary judgment. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). When considering a summary judgment motion, the court must view the evidence in the light most favorable to the non-moving party and give that party the benefit of any and all reasonable inferences. *Id.* at 255, 106 S.Ct. 2505; *Iverson*, 452 F.3d at 98. Moreover, at the summary judgment stage, the court does not make credibility determinations or weigh the evidence. *Anderson*, 477 U.S. at 255, 106 S.Ct. 2505. The court may safely ignore all conclusory allegations, unsupported speculation, and improbable inferences. *See Medina–Munoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir.1990).

## II. Factual and Procedural Background

The court derives the following summary of the relevant facts from the parties' statements of material facts (Docket Nos. 94 & 103).

Montañez resides in New York and visits Puerto Rico approximately once every five years. She is unfamiliar with Puerto

---

1. Although a state cannot be a "citizen" of itself for diversity jurisdiction purposes, a political subdivision, such as a municipality, is presumed a citizen for diversity purposes unless it is an alter ego of the state. *Moor v.* *County of Alameda*, 411 U.S. 693, 717, 93 S.Ct. 1785, 36 L.Ed.2d 596 (1973); *Univ. of R.I. v. A.W. Chesterton Co.*, 2 F.3d 1200, 1202 (1st Cir.1993).

Rico's roads. On Saturday, November 23, 2002, she arrived in Puerto Rico to attend her cousin's wedding. That same day, an accident occurred at the four way intersection of Santa Cecilia Street and Esquilín Street in Santurce, Puerto Rico.

Montañez was driving a rented 2002 Suzuki Baleno at approximately 6:30 P.M. Two passengers were in the vehicle with her. As Montañez traveled North to South on Santa Cecilia Street, she approached the Esquilín Street intersection. She encountered no stop sign at the unfamiliar intersection. She slowed down and yielded before entering the intersection; she did not come to a complete stop. She then continued traveling on Santa Cecilia Street. Juan Calcaño, traveling East to West on Esquilín Street, approached the intersection driving a 1988 Pontiac Firebird. He approached and entered the intersection from Montañez's left. The front of Calcaño's vehicle impacted the left posterior side of Montañez's vehicle. Wilma Miledia owned the vehicle Calcaño drove.

On the day of the accident, no stop sign regulated traffic at the intersection. The stop sign that historically regulated the flow of traffic on Santa Cecilia Street entering Esquilín Street had been removed.[2] Notwithstanding, the police officer who investigated the accident faulted Montañez for failing to take the necessary care upon entering the intersection.

On November 21, 2003, Montañez's passengers filed a suit arising out of the accident in the Puerto Rico trial court. The Puerto Rico complaint named the Municipality, Montañez, her insurance company (GEICO), Calcaño, and others as co-defendants. The Puerto Rico complaint raised the same allegations regarding the missing stop sign as Montañez raises in this litigation.

Montañez received documentation informing her of the Puerto Rico case. She did not, however, receive formal service of process, waive service of process, or formally appear in the action. GEICO appeared in the action. At an April 13, 2004 hearing, GEICO's counsel informed the court that we would formally appear on Montañez's behalf. He never did so. During a January 28, 2005 status conference, the passenger-plaintiffs' attorney informed the Puerto Rico court that they had failed to effect service of process upon Montañez. The record contains no evidence that the passenger-plaintiffs' attempted to serve Montañez after the status conference.

The Puerto Rico case settled on September 6, 2005; the parties filed a motion for judgment pursuant to the settlement agreement on September 22, 2005. Attorneys representing the passenger-plaintiffs, the Municipality, the Municipality's insurer, GEICO, and other defendants executed the settlement agreement. Neither GEICO nor Montañez asserted a cross-claim against the Municipality.

Montañez filed this suit on December 15, 2004. She alleges that the Municipality negligently failed to maintain the stop sign and that its negligence caused her accident. She named only the Municipality and its insurers as defendants. She did not name as defendants Calcaño or Miledia. The Municipality did not file a third-party complaint against either Calcaño or Miledia.

## III. Discussion

The Municipality presents three arguments in support of its motion for summary judgment. First, it argues that a provision in the Puerto Rico Civil Code negates the possibility that it could incur liability for the missing stop sign. Second,

---

**2.** It is undisputed for summary judgment purposes that the stop sign that would have restricted Montañez from entering the intersection was missing on the day of the accident.

the Municipality seeks dismissal on the ground that Montañez failed to join an indispensable party. Finally, the Municipality contends that res judicata principles preclude Montañez from litigating in this forum the Municipality's alleged negligence. The court concludes that each argument lacks merit.

## A. The Municipality's Liability for the Missing Stop Sign

■ Montañez argues that the Municipality's failure to properly maintain a stop sign was the cause in fact of her damages. The Municipality responds that it cannot be held liable for her damages because Article 6.11 of the Vehicle Traffic Law of 2000, P.R. Laws Ann. tit. 9, § 5161, dictates the course of action drivers must follow at intersections with no traffic signs. The Municipality contends that Calcaño violated Article 6.11, and, accordingly, he and Miledia are exclusively liable for Montañez's damages. Montañez disagrees and argues that the road on which Calcaño traveled, Esquilín Street, constituted a "preferential traffic road," and, consequently, Article 6.11 did not apply. Defendants, however, reason that Esquilín Street lost its preferential status when the stop sign was removed, notwithstanding the lack of evidence indicating that the Municipality authorized its removal. Accordingly, this court must determine (1) whether a municipality may be held liable for failing to properly maintain a traffic sign; and (2) whether a road loses its preferential status if a stop sign is removed without a municipality's consent.

■ Article 1802 of the Puerto Rico Civil Code, P.R. Laws Ann. tit. 31, § 5141, permits the recovery of tort damages upon a showing that a defendant "by act or omission cause[d] damage to another through fault or negligence." Montañez's negligence claim against the Municipality will prevail only if she demonstrates: "(1) [a] physical or emotional injury, (2) a negligent or intentional act or omission (the breach of duty element), and (3) a sufficient causal nexus between the injury and defendant's act or omission (in other words, proximate cause)." *Vazquez–Filippetti v. Banco Popular de P.R.*, 504 F.3d 43, 49 (1st Cir.2007) (citing *Torres v. KMart Corp.*, 233 F.Supp.2d 273, 277–78 (D.P.R.2002)); *see also Cintron Adorno v. Gomez*, 99 TSPR 18, 147 D.P.R. 576, 598–99 (1999) (discussing elements of negligence claim under Puerto Rico law). In Puerto Rico, a municipality has a duty to maintain roads and sidewalks in reasonably safe condition for normal use. A municipality's failure to comply with this duty constitutes negligence even if a third party created the hazardous situation with or without the municipality's consent. *See Del Toro v. Gobierno de la Capital*, 93 D.P.R. 481, 484–85 (1966); *see also Serra v. Autoridad de Transporte*, 67 D.P.R. 611, 618–19 (1947) (holding municipalities may be liable for negligent acts of their agents carrying out governmental and corporate functions).

Here, the parties do not cite and the court cannot find case law in which the Puerto Rico Supreme Court acknowledged the proper maintenance of traffic signs as part of a municipality's duty to properly maintain streets. A popular treatise upon which the *Del Toro* court relied, however, explains that a municipality's duty to properly maintain streets typically includes the proper maintenance of traffic signs. *See* 18 Eugene McQuillin, *The Law of Municipal Corporations* § 53.42 (3d ed. 2004)[3]

---

**3.** The Puerto Rico Supreme Court has repeatedly relied upon the McQuillin treatise in cases involving a municipality. *See, e.g., Salas v. Municipio de Moca,* 19 P.R. Offic. Trans. 668, 673, 675, 119 D.P.R. 625 (1987); *Davidson v. H.I. Hettinger & Co.,* 62 D.P.R. 301, 308 (1943).

("Failure of a city to put a sign back up ... has been regarded as a failure to maintain public highways and streets in reasonable repair."). The McQuillin treatise also states that a municipality "has a duty to maintain devices installed for traffic control so as not to create traps or undue danger." *Id.* Several state courts, some relying on McQuillin, have found municipalities liable for damages arising from improperly maintained traffic signs. *See e.g., Fankhauser v. City of Mansfield,* 19 Ohio St.2d 102, 249 N.E.2d 789, 792 (1969) ("[A] municipality has the obligation to keep the streets ... free from nuisance.... [A] nonfunctioning overhead electric traffic signal ... affects the physical condition existing in or on highways and may be determined to be a nuisance...."); *Grantham v. City of Topeka,* 196 Kan. 393, 411 P.2d 634, 641–42 (1966) (holding city may be responsible for automobile collision resulting from negligent failure to maintain stop sign at intersection of street designated as through street (citing McQuillin, *supra,* § 53.42)); *Wagshal v. District of Columbia,* 216 A.2d 172, 174 (D.C.1966) ("The District need not have put up the sign, but once it did, it had a duty to maintain it properly in order to keep the intersection reasonably safe for motorists."); *O'Hare v. City of Detroit,* 362 Mich. 19, 106 N.W.2d 538, 541–42 (1960) (holding maintenance of stop sign, once erected, part of statutory liability to maintain streets in condition reasonably safe and fit for travel). *But see Baker v. City of Jacksonville,* 138 N.C.App. 99, 530 S.E.2d 353, 358 (2000) (holding maintenance of stop sign constitutes discretionary governmental function that normally entitles municipality to governmental immunity).

The *Del Toro* court held that municipalities in Puerto Rico have a duty to maintain streets and sidewalks in reasonably safe condition and may be liable for damages resulting from improperly maintained streets as sidewalks. As noted in other jurisdictions and McQuillin, the duty to maintain streets and sidewalks logically extends to traffic signs. The removal of a stop sign from an intersection without a municipality's consent may create a dangerous condition for motorists. The failure to replace the missing stop sign prolongs the hazardous condition and may lead to municipal liability for injuries arising out of accidents caused by the missing sign.

Here, the Municipality takes the position that a missing stop sign does not create a dangerous condition and, accordingly, no government entity can ever be held liable for a missing stop sign. More specifically, the Municipality argues that the missing stop sign did not constitute a dangerous condition because Article 6.11 provides the course of action drivers must follow at intersections where no traffic signal indicates a right-of-way. Article 6.11 provides in pertinent part:

(a) When two (2) vehicles coming from different public roads approach or enter an intersection at the same time, the driver of the vehicle on the left shall yield the right of way to the vehicle on the right, except on public roads for through traffic or when otherwise provided in this chapter.

P.R. Laws Ann. tit. 9, § 5161(a). The statute indicates that the driver on the right has the right-of-way at intersections with no traffic signs. Montañez approached the intersection on Calcaño's right; Calcaño did not yield to Montañez. Consequently, the Municipality reasons that Calcaño failed to cede the right-of-way as required by Article 6.11 and is exclusively responsible for Montañez's damages.

Montañez responds that Article 6.11's provisions do not apply in this case because Esquilín Street was designated as a

"preferential traffic road." Puerto Rico law defines a "preferential traffic road" as "any public highway or portion thereof, upon which the traffic of motor vehicles has a preferential right of way over motor vehicles coming from other public highways, in compliance with 'stop' and 'yield' signs, or any other official sign installed to regulate traffic." *Id.* § 5001(115). Article 6.11 does not apply to preferential traffic roads. *See id.* § 5161(a) (exempting traffic on through or preferred roads from yielding right-of-way rules).

Had the stop sign at the corner of Santa Cecilia Street and Esquilín Street been in place, there would be no doubt as to the Esquilín Street's preferential status. The Municipality, however, reasons that Esquilín Street lost its preferential status once the stop sign was removed and that Article 6.11 automatically applied because it does not differentiate between an unmarked intersection which never had a stop sign installed and an unmarked intersection which had a stop sign removed or stolen. The Municipality's argument implies that a road loses its "preferential" status every time a traffic sign is removed regardless of whether the municipality consented to the sign's removal and that only drivers can be held liable for damages arising out of an accident at an intersection once regulated by a traffic signal.

The Municipality's argument does not convince the court. Puerto Rico law defines traffic signals as "any signal, traffic control light, mark or device consistent with this chapter, which has been installed or placed by order of a **competent government body or official,** for the purpose of regulating, controlling or managing traffic." *Id.* § 5001(89) (emphasis added). The definition includes stop signs. Puerto Rico law grants local authorities the power to "designate any public road as preferential or designate any intersection as a stopping or a yield right of way point." *Id.*

§ 5604(4). If only a government official may designate traffic signals and "preferential traffic roads," then the court can reasonably conclude that only a proper government official may authorize the removal of traffic signs or the removal of a road's preferential status. *See* D.E. Buckner, Annotation, *Mototorist's liability for collision at intersection of ordinary and arterial highways as affected by absence, displacement, or malfunctioning of stop sign or other traffic signal,* 74 A.L.R.2d 242, § 3, 1960 WL 13347 (1960) (noting that in most jurisdictions superior street does not lose superior status by reason of unauthorized removal of stop sign on inferior street). To conclude that unauthorized persons can exercise such power would contradict legislative intent to permit only a competent government entity to erect traffic signals to regulate traffic flow and to permit local authorities to designate a road as preferential. It would also create a level of uncertainty for drivers if they had to anticipate unexpected changes at intersections from the unauthorized removal of signs. They would be expected to stop at every intersection on the chance that a previously erected stop sign had been downed.

Here, the Municipality erected a stop sign which effectively made Esquilín Street preferential road. Article 6.11 explicitly states that preferential roads fall outside of the unmarked intersection rules. The exclusive power given to municipalities to erect and maintain traffic signs is indicative of the exclusive power to also remove traffic signs and alter a road's preferential status. The record contains no evidence that the Municipality consented to the removal of the stop sign or the road's preferential status. Consequently, the court cannot accept the Municipality's argument that Article 6.11 negates any possibility that it could be liable for Montañez's injuries. Ultimately, the Muncipal-

ity's liability, or lack thereof, will depend upon issues not addressed in its summary judgment motion, for example whether the Municipality had notice of the missing stop sign and whether both Calcaño and Montañez were familiar with the intersection.

## B. Joinder of Indispensable Parties

■ The Municipality next faults Montañez's decision to exclude Calcaño and Miledia as defendants. The Municipality urges the court to dismiss Montañez's complaint for failure to join these allegedly indispensable parties. Montañez alleges that Calcaño, and Miledia are potential joint tortfeasors, and, consequently, their joinder is not required.

Rule 19 of the Federal Rules of Civil Procedure, which controls joinder of parties, permits a plaintiff to proceed against one but not all joint tortfeasors. *See Temple v. Synthes Corp., Ltd.,* 498 U.S. 5, 7, 111 S.Ct. 315, 112 L.Ed.2d 263 (1990) (per curiam). "If one thing is clear in respect to Rule 19, it is that, unlike a person vicariously liable in tort, a person potentially liable as a joint tortfeasor is not a necessary or indispensable party, but merely a permissive party subject to joinder under Rule 20." *Pujol v. Shearson/Am. Express, Inc.,* 877 F.2d 132, 137 (1st Cir.1989). The court has concluded that the Municipality is potentially directly liable to Montañez for its failure to maintain the stop sign. *See supra* Section III.A. Calcaño and Miledia are at best for the Municipality potential joint tortfeasors. Rule 19 does not require their joinder in this action.

## C. Preclusion

■ The Municipality's final argument invokes res judicata principles. The Municipality argues that Montañez is precluded from bring her claim against the Municipality because she could and should have raised it in the Puerto Rico court litigation. In response, Montañez points out that she neither received nor waived service of process in the Puerto Rico litigation. She also highlights that the Municipality never filed a cross-claim against Montañez or GEICO and that Montañez did not file any claim against the Municipality in the local case. Montañez contends that, in light of such facts, the judgment issued in the local litigation does not preclude her from filing her negligence claim against the Municipality in this court.

■ The federal court must give full faith and credit to a final judgment issued by a Puerto Rico court. The court looks to Puerto Rico law to determine the preclusive effect of Puerto Rico judgment. *See Cruz v. Melecio,* 204 F.3d 14, 18 (1st Cir.2000). Under Puerto Rico law, res judicata applies where there exists "the most perfect identity between the things, causes and persons of the litigants, and their capacity as such." P.R. Laws Ann. tit. 31, § 3343. Puerto Rico law recognizes "res judicata," i.e., claim preclusion, and also permits issue preclusion, or "collateral estoppel by judgment." *See Texaco P.R., Inc. v. Medina,* 834 F.2d 242, 245–46 (1st Cir.1987). Issue preclusion is permitted even when identity of causes is lacking. *See Moron–Barradas v. Dep't of Educ.,* 488 F.3d 472, 479 (1st Cir.2007). Issue preclusion applies, however, only if the parties to the prior action actually litigated the facts in question and those facts must have been essential to a valid and final judgment in the prior action. *Id.* Under Puerto Rico law, a settlement has, with regard to the parties, res judicata effect. P.R. Laws Ann. tit. 31, § 4827.

It is not clear whether the Municipality relies upon the claim preclusion or issue preclusion doctrine. The court has considered whether either doctrine applies in this case and concludes that neither claim preclusion nor issue preclusion precludes Montañez's claim.

The passenger-plaintiffs never served Montañez in the Puerto Rico court litigation. Although an attorney at one point indicated he would appear on her behalf, he never appeared and Montañez never waived service of process. More than nine months after the attorney so indicated and more than seven months before the parties reached a settlement agreement, the passenger-plaintiffs acknowledged that they never served Montañez. The made their acknowledgment before the Puerto Rico court and the other parties. Having never received or waived service of process, Montañez did not participate in the Puerto Rico court litigation or the settlement compromise. Under such circumstances, the court concludes that neither claim preclusion nor issue preclusion bars Montañez from asserting her claim against the Municipality in this forum.[4]

## IV. Conclusion

For the foregoing reasons, the court hereby **DENIES** the Municipality's motion for summary judgment (Docket No. 92).

**SO ORDERED.**

---

**4.** Additionally, the court notes that the Municipality filed no cross-claims against other defendants and Montañez filed no cross-claims against the Municipality. Such cross-claims would have been permissive rather than compulsory, and res judicata generally would not prevent them from being raised in a later litigation. *Compare* P.R. Laws Ann. tit. 32, App. III, Rule 11.7 (Puerto Rico's cross-claim rule stating litigant "may" file cross-claim against co-party), *and id.* Rule 11.2 (Puerto Rico's permissive counterclaim rule employing "may" language), *with id.* Rule 11.1 (Puerto Rico's compulsory counterclaim rule employing "shall" language). This coincides with the federal crossclaim rule. *See* Joseph W. Glannon, *Civil Procedure: Examples & Explanations* 515–16 (5th ed.2006) (noting Rule 13(g) authorizes but does not require defendant to assert related claim against co-defendant in original action).