José R. Oliver y su esposa Elvira Roses de Oliver, demandantes y recurridos, *v.* Municipio de Bayamón, demandado y recurrente.

Número: 462      Resuelto: 26 de noviembre de 1963

*Armando A. Miranda,* y *P. J. Santiago Lavandero,* abogados del recurrente; *F. Fernández Cuyar,* abogado de los recurridos.

Sala integrada por el Juez Presidente Señor Negrón Fernández y los Jueces Asociados Señores Blanco Lugo y Ramírez Bages.

EL JUEZ ASOCIADO SEÑOR BLANCO LUGO emitió la opinión del Tribunal.

En varias ocasiones hemos resuelto que a los municipios sólo se les exige que mantengan sus calles y aceras en condiciones de razonable seguridad. No es un asegurador de los transeúntes ni se les requiere que las conserven en un estado perfecto. Así, en *Davidson* v. *H. I. Hettinger & Co.*, 62 D.P.R. 301 (1943), se compensó a la demandante por los daños sufridos con motivo de una caída ocurrida al tropezar con un hueco o depresión existente en una acera, y específicamente indicamos que si una acera está o no en condiciones de razonable seguridad es una cuestión de hecho a ser resuelta tomando en consideración las medidas y profundidad del hueco, el ancho de la acera, la frecuencia del tránsito por los viandantes y la posibilidad de descubrir el defecto por quienes con cuidado razonable la utilizan. En *Vélez* v. *La Capital*, 77 D.P.R. 701 (1954), sostuvimos que el deber de mantener las aceras en buen estado de conservación se extiende al área que se encuentra próxima al encintado destinada a la siembra de árboles, y que constituye negligencia permitir que estas áreas estén varias pulgadas más bajas que el encintado y que las raíces de los árboles sembrados sobresalgan de las mismas. Véase, *Blanco* v. *Municipio de Mayagüez*, 57 D.P.R. 482 (1940), y cf. *Tavárez* v. *San Juan Lodge*, 68 D.P.R. 735 (1948). Como veremos, estos principios generales nos señalan las normas generales a aplicarse en el presente recurso en que el accidente ocurrió en un área inmediata a la acera.

Para una mejor comprensión del problema a resolver, transcribiremos las determinaciones de hechos del tribunal de instancia, que después de examinar detenidamente la transcripción de evidencia, puede afirmarse que están ampliamente sostenidas por la prueba:

"1. El día 27 de junio de 1956, cerca de las once de la noche, mientras la Sra. Elvira Roses de Oliver, después de salir con su esposo y algunos amigos de un juego de baloncesto, caminaba por una acera pública de la ciudad de Bayamón hacia el sitio donde su esposo había dejado estacionado el automóvil, quiso evitar caer en una depresión o roto que había sobre la acera y se movió hacia el borde derecho para seguir caminando. El sitio en cuestión era oscuro esa noche, iban muchas otras personas delante de la demandante, y, al caminar unos pasos más, súbitamente la demandante cayó dentro de un hueco que había inmediatamente contiguo al borde derecho de la acera.

"2. Dicho hueco medía once pulgadas de largo y diecinueve pulgadas de ancho. Tenía una profundidad de cuatro pies.

"3. No había luz alguna dentro del mismo, ni habían barreras o vallas o cercas algunas separando el borde de la acera del hueco. Tampoco había letrero o signo alguno advirtiendo a los peatones y transeúntes de la existencia del hueco.

"4. La acera por donde caminaba la demandante cuando sufrió la caída ya descrita es propiedad del Municipio de Bayamón, el cual está encargado de su limpieza, mantenimiento y reparación. Como cuestión de hecho, algún tiempo después de ocurrido este accidente el municipio la reparó rellenando y cubriendo con concreto la depresión que en ella había y que indujo, como hemos dicho antes, à la demandante a moverse hacia la derecha para evitar caer en dicha depresión u hoyo.

"5. El municipio conocía la existencia del hueco donde cayó la demandante con anterioridad a dicha caída. . . ."

1. Las determinaciones de hechos transcritas no pueden llevar a otra conclusión que la de la existencia de responsabilidad por parte del municipio. Como parte de su obligación de mantener las aceras en razonables condiciones de uso, correspondía al municipio tomar medidas para evitar causar daños por la situación peligrosa existente que consistía en el hueco inmediato al borde interior de la acera. No podía desconocer esta responsabilidad descansando en el hecho de que el lugar de la existencia del hueco no le pertenecía ni estaba bajo su control, cuando el riesgo podía anticiparse y estaba tan próximo a la acera que convertía el uso de ésta en inseguro. Lo menos que podía exigírsele era que ante una

situación de tan patente peligro construyera un muro o barandilla de pequeña elevación en el límite de la acera para resguardar a los transeúntes. *Gallipo* v. *City of Long Beach,* 304 P.2d 106 (Cal. 1957); *City of Hartshorne* v. *Carlomagno,* 287 P.2d 696 (Okl. 1955); *Roberts* v. *City of Fairborn,* 141 N.E.2d 297 (Ohio, 1956); *Nicholson* v. *City of Des Moines,* 60 N.W.2d 240 (Iowa, 1956); *Jacks* v. *Birmingham,* 105 So.2d 121 (Ala. 1958); Anotación, *Duty and liability of municipality as regards barriers for protection of adult pedestrians who may unintentionally deviate from street or highway into marginal or external hazards,* 44 A.L.R.2d 633 (1955). Antieau, *Municipal Corporation Law* (1963), vol. 2, sec. 11.20, pág. 98.20, expone la regla general en la siguiente forma: "Cuando excavaciones, declives, terraplenes u otros defectos que entrañan peligro colindan con las aceras, o están tan próximas a éstas como para crear un riesgo, constituye un deber del municipio tomar precauciones para garantizar la seguridad de las aceras a aquellas personas que las utilizan corrientemente." Véanse, en el mismo sentido, Yokley, *Municipal Corporations,* (1958), vol. 3, sec. 461, y McQuillin, *Municipal Corporations,* 3a. ed. (1950), vol 19, sec. 54.69. Se trata una vez más de una aplicación del criterio de previsibilidad como índice de responsabilidad.

■ Podría argüirse que el dueño del solar colindante era también responsable de la existencia de la situación peligrosa. Para ello hubiese sido necesario demostrar que la construcción de la verja que separaba el predio de su propiedad de la acera era de fecha posterior a la obra municipal. *Hayden* v. *Philadelphia,* 112 A.2d 812 (Pa. 1955). Sin embargo, no se le incluyó como tercera parte demandada. La evidencia está huérfana de indicios sobre este hecho. Cabe presumir, por tanto, que la acera se construyó posteriormente, y siendo ello así, correspondía al municipio tomar las precauciones necesarias

para evitar daños a terceras personas debido a la existencia de la situación peligrosa. (¹).

2. Los otros errores señalados se dirigen a impugnar por excesiva la cuantía de la indemnización concedida y la imposición de honorarios de abogado.

■ a) El tribunal de instancia determinó que como resultado de la caída la demandante, quien para la fecha del accidente contaba 56 años de edad, sufrió dos fracturas en su tobillo derecho—"una impactada (²) [sic] a través del medio del hueso calcáneo [hueso del talón que forma parte del tarso] y otra cortical del maleolo externo [extremo inferior del peroné]". Se le atribuyó una incapacidad residual permanente en las funciones del tobillo derecho de un veinte y cinco por ciento, que se manifiesta en dolor al caminar por tiempo prolongado. El tratamiento a que se le sometió fue el usual y corriente para estos casos, el de inmovilización de la pierna afectada, y se extendió cuando menos por dos meses. Doce mil dólares le fueron concedidos.

Hemos examinado la prueba pericial consistente en las certificaciones de los doctores Manuel Espinosa, Gabriel Zamorano e Ian D. Murphy, y la determinación sobre la existencia de dos fracturas no está sostenida. El doctor Espinosa se refiere a "una fractura del calcáneo por el centro del cuerpo de éste con ligero colapso o depresión," y el hallazgo de "una pequeña avulsión cortical [desgarre superficial] del maleolo."

---

(¹) En la contestación a la demanda no se hizo alegación alguna de negligencia concurrente, que para la fecha del accidente constituía una defensa eximente de responsabilidad parcial. Considerada la prueba no puede afirmarse que esa fuera la situación, pues según surge de la misma, el accidente ocurrió de noche, en un sitio pobremente iluminado, y en un lugar que la actora podía confiar que era seguro. Además, tampoco se le exigía que caminara continuamente atenta al suelo para descubrir posibles peligros y evitarlos. *Davidson* v. *H. I. Hettinger & Co.,* supra.

(²) Fractura con impacto es aquélla en la que un fragmento penetra en otro. Esta definición, al igual que las que aparecen entre paréntesis después de ciertos términos, ha sido tomada del *Diccionario Terminológico de Ciencias Médicas,* Salvat Editores, (4ta. ed., 1952).

448

El diagnóstico del doctor Zamorano Estapé fue de "una fractura del calcáneo derecho," y el doctor Murphy alude a la misma como resultado del examen por él practicado. No hay duda de que el juzgador al fijar la cuantía de la indemnización estuvo bajo la impresión de que se trataba de dos, y no de una, fractura, y que ello se reflejó en el importe por él fijado. Considerados los hechos anteriormente expuestos, la indemnización se reducirá a $9,000.

■ b) Un examen de los autos originales revela que en la demanda presentada se alegó que la demandante sufrió una caída "por un hueco de grandes dimensiones que había sido dejado abierto en dicha acera," mientras que la prueba demostró que el accidente ocurrió en un lugar adyacente a la acera. Además, la cuestión sobre la responsabilidad del municipio por daños causados con motivo de peligros existentes en sitios contiguos a las aceras no había sido dirimida anteriormente en esta jurisdicción. Bajo tales circunstancias no se justifica la imposición de honorarios de abogado.

*Se modificará la sentencia en la forma indicada, y así modificada, se confirmará.*