RAÚL MARÍN, demandante y recurrido, *v.* GOBIERNO DE LA CAPITAL DE P.R., JIMÉNEZ & FERNÁNDEZ, SUCRS., y la PORTO RICAN AMERICAN INS. CO., INC., demandados, y recurrentes las últimas dos.

*Número:* 366      *Resuelto:* 26 de noviembre de 1963

*Héctor Martínez Muñoz,* y *José Enrique Otero,* abogados de las recurrentes; *Gustavo Wiscovitch,* abogado del recurrido.

Sala integrada por el Juez Asociado Señor Pérez Pimentel como Presidente de Sala y los Jueces Asociados Señores Dávila y Ramírez Bages.

EL JUEZ ASOCIADO SEÑOR DÁVILA emitió la opinión del Tribunal.

El accidente, origen de este pleito, ocurrió en una acera en la Avenida Fernández Juncos cerca de la Parada 18 frente al edificio donde están localizadas las dependencias de la demandada Jiménez & Fernández, Sucrs. El demandante tenía sus oficinas en un edificio cercano y acostumbraba a pasar por esa acera. Expuso el tribunal de instancia en sus determinaciones de hechos que "[l]a acera frente a dicha entrada

estaba inclinada hacia la calle y en la parte hacia afuera de la misma existían *algunos pequeños hoyos y desniveles.* Dicha situación era conocida del demandante, según declaró, ya que antes había tenido allí tropiezos de los que no se había quejado. Según el demandante 'conocía bien el sitio y la situación de la acera ya que pasaba por allí constantemente'." (Subrayado nuestro.) Efectivamente las fotografías del sitio claramente demuestran que el desnivel existente era pequeño.

Por ser ello así, el juez sentenciador concluyó "que el hueco o depresión de la acera con el cual tropezó el demandante ocasionando su caída y resultantes lesiones no era uno de tal naturaleza que por sí demostrase negligencia por parte del Gobierno de la Capital en el mantenimiento de dicha acera."

No obstante la anterior determinación, el tribunal de instancia concluyó, luego de exonerar al gobierno municipal, que la otra demandada Jiménez & Fernández, Sucrs. era responsable ya que "el sitio de la acera donde ocurrió el accidente era una de las entradas que tenía y usaba dicha demandada para sus vehículos" y "venía obligada por tanto a tener y mantener dicha entrada, parte de la acera pública, en condiciones de seguridad para los transeúntes".

Procede en primer lugar considerar si el dueño de un edificio contiguo a una acera pública que la utiliza como acceso especial para los vehículos de su negocio, es responsable de reparar los desperfectos que el uso y otros elementos puedan ocasionarle. Luego de establecida esa obligación, determinaremos si el desperfecto específico, era uno de tal naturaleza que el no haberlo corregido hace responsable al dueño del edificio de los daños sufridos por el demandante.

En *Ramos* v. *Carlo,* 85 D.P.R. 353 (1962), esbozamos el criterio de que es responsable. Allí dijimos: "Sostener el fallo en su razón de derecho equivaldría a establecer la doctrina que un propietario adyacente o cualquier vecino, en menosprecio de su deber general de corrección para con los

demás ciudadanos como diría Barassi, puede crear sin responsabilidad civil alguna condiciones peligrosas en las aceras, imponiendo la obligación al peatón que camina por ellas de ser un perenne vigilante de su seguridad." La condición peligrosa puede consistir como en el caso de *Carlo* de objetos o artefactos que se dejan sobre la acera o de desperfectos peligrosos que se forman en aquel sector de la acera que use especialmente el propietario. Ejemplo común del uso especial es la alteración de la acera para hacer fácil la entrada de vehículos. *Granucci* v. *Claasen,* 269 Pac. 437 (Cal. 1928) ; *Peters* v. *City and County of San Francisco,* 250 P.2d 675 (Cal. 1952). Se ha sostenido la obligación de los dueños de las edificaciones que lindan con las aceras de repararlas cuando las usan para un propósito especial. 2 Antieau, *Municipal Corporation Law,* sec. 11:20, pág. 98:41 (ed. 1962) ; *McFerrin* v. *Crescent Amusement Co.,* 364 S.W.2d 102 (Tenn. 1963) ; *Herron* v. *City of Youngstown,* 24 N.E.2d 708 (Ohio 1940). Esta obligación descansa "sobre los principios de que el uso especial a que las dedica el dueño colindante conlleva la obligación de impedir que, como resultado de este uso especial, se desarrollen condiciones peligrosas o inseguras." *Lee* v. *City of Baton Rouge,* 141 So.2d 125 (La. 1962). Y como el que por acción u omisión negligente causa daño a otro responderá del daño que cause, Art. 1802 del Código Civil, 31 L.P.R.A. sec. 5141, es clara la responsabilidad del dueño del edificio contiguo que no repara la acera que él mismo ha alterado.

Establecido lo que antecede, procede ahora considerar si la codemandada Jiménez & Fernández, Sucrs. fue negligente al no reparar el desperfecto en la acera.

■ En *Davidson* v. *H. I. Hettinger & Co.,* 62 D.P.R. 301 (1943) establecimos la responsabilidad del gobierno municipal en relación con accidentes ocurridos con motivo de la negligencia de sus funcionarios y empleados en el mantenimiento de las aceras. Sostuvimos allí que "[s]i una acera está en condiciones de razonable seguridad o no es una cuestión de hecho

a ser resuelta por la corte de acuerdo con los hechos probados y al determinarlo en un caso como el de autos, se deben tomar en consideración, entre otras, las siguientes circunstancias: el ancho, largo y profundidad del hueco; el ancho de la acera; si la calle es una por la que transitan muchas personas; si el hueco es de tal naturaleza que no es claramente visible a los transeúntes que caminan con el cuidado razonable que anteriormente hemos mencionado".

■ Con estos criterios ante sí, el tribunal de instancia invocó el dictamen de *Hettinger* al fallar, como hemos dicho, relevando de responsabilidad al Gobierno de la Capital. Consideró que el gobierno no actuó negligentemente al no reparar el desperfecto de la acera. Fue correcta su determinación en ese sentido. El desperfecto que ocasionó la caída del demandante, como lo demuestran las fotografías presentadas en evidencia, consistía en una pequeña depresión. Es generalmente aceptado según se expone en *White* v. *City of Alexandria*, 43 So.2d 618 (La. 1949) que: "Los defectos en la aceras que no participan de la naturaleza de trampas, o de los cuales no se puede razonablemente anticipar peligro, impiden una causa de acción por negligencia. Estas aceras son dedicadas al uso público y, por supuesto, un peatón tiene derecho a asumir que no son peligrosas. Más aun, no se le requiere que observe constantemente la superficie de la acera, o que ejercite el cuidado que sería necesario al atravesar una selva. Desde luego, el peatón no puede estar completamente ajeno a la condición de la acera; él debe usar un cuidado ordinario cuando las usa, teniendo presente el hecho tan bien conocido que en todas las ciudades en este estado, no importa su tamaño, existen irregularidades en las aceras producidas por recursos naturales como lo son la lluvia, la temperatura, la erosión y las raíces de los árboles.

■ "Para determinar lo que es un defecto peligroso en una acera (que hace al municipio responsable por daños sufridos por peatones lesionados como consecuencia de ello)

no hay una regla fija; los hechos y demás circunstancias en cada caso controlan. La prueba usualmente aplicada, sin embargo, requiere una contestación a la pregunta si la acera es o no es mantenida en condiciones razonablemente seguras para su uso por personas que ejercitan el cuidado y la prudencia ordinaria." Véanse además: Antieau, *op. cit.* sec. 11:20, pág. 98:23; *City of Cleveland* v. *Treadgill,* 148 So.2d 670 (Miss. 1963); Anotación, *Sidewalk Defect—Question for Jury,* 37 A.L.R.2d 1187, 1192 (1954); *Oliver* v. *Municipio de Bayamón,* 89 D.P.R. 442 (1963).

■ Resultaría arbitrario eximir de responsabilidad al gobierno municipal a la luz de los criterios antes expuestos e imponerla a los dueños de edificios colindantes con las aceras a base de normas distintas más estrictas. Ciertamente si el gobierno no era responsable en este caso, como correctamente lo determinó el tribunal de instancia, tampoco lo era la otra demandada, ya que el desperfecto de la acera era uno que razonablemente no requería que se anticipara una situación de peligro para los transeúntes. Además la prueba demostró que la demandada Jiménez & Fernández, si bien originalmente alteró la superficie de la acera para facilitar el acceso a sus dependencias, no es menos cierto que desde hacía bastante tiempo no utilizaba la mencionada entrada para su uso particular. Hay que recordar que quedó establecido que el demandante sabía del desperfecto, pues tenía sus oficinas en aquella vecindad, y conocía bien el sitio de la acera ya que pasaba por allí constantemente.

Media otra circunstancia, sobre la cual no hizo determinación el juez sentenciador pero que el propio demandante dejó claramente establecida. Cuando ocurrió el accidente el demandante cargaba en su mano izquierda un taladro y en los precisos momentos en que tropezó su mano derecha la había introducido en un bolsillo del pantalón para sacar las llaves de su automóvil. Obviamente en esas condiciones le era difícil guardar el balance para mantenerse erguido en caso de que

tropezara. Es razonable concluir que la causa del accidente, teniendo en cuenta este hecho, no fue el desperfecto de la acera que ya hemos visto era pequeño, y sí la circunstancia de que en ese preciso momento el demandante no pudo guardar el balance. Siendo ello así, fue errónea la determinación que responsabilizó del accidente sufrido por el demandante a la firma Jiménez & Fernández.

*Se revocará la sentencia que dictó el Tribunal Superior, Sala de San Juan, en 24 de junio de 1960.*