HILDA LUZ VÁZQUEZ, demandante y recurrida, *v.* AUTORIDAD DE LAS FUENTES FLUVIALES DE PUERTO RICO, demandada y recurrente.

Número: R-69-171    Resuelto: 13 de enero de 1971

*José Antonio Arabía* y *Ángel Luis Mayol,* abogados de la recurrente; la parte recurrida no compareció.

PER CURIAM: Debe revocarse la sentencia que condenó a la Autoridad de las Fuentes Fluviales de Puerto Rico a pagar a la recurrida la cantidad de $1,300 más las costas y $200 de honorarios de abogado en razón de las lesiones y daños morales sufridos por la recurrida como consecuencia de tropezar con un cable tensor de la recurrente tendido sobre la acera en una calle del pueblo de Aguada por la cual caminaba la recurrida.

Apunta la recurrente que el tribunal de instancia incidió al concluir que (1) la lesión por la cual reclamó la recurrida le ocurrió al tropezar con el cable tensor; (2) el accidente se debió a la negligencia de la recurrente al instalar el tensor en el centro de la acera interrumpiendo el paso de peatones; (3) la valorización de la responsabilidad de la recurrente era la suma de $1,300 pues la misma es exagerada e irrazonable; (4) al imponer a la recurrente el pago de honorarios de abogado. Por último, apunta que el tribunal de instancia debió concluir que el accidente se debió a la negligencia de la recurrida o que ésta contribuyó a la ocurrencia del mismo.

1.—El único testigo del accidente fue la propia recurrida. Declaró que el accidente ocurrió en 20 de diciembre de 1966 a eso de las once de la mañana cuando se dio en la espinilla derecha contra un cable tensor colocado en medio de la acera del pueblo de Aguada por donde transitaba. Testificó la doctora que examinó el hematoma en la pierna de la recurrida al día siguiente, en el Hospital Bella Vista de Mayagüez, que "le hicimos un tratamiento de antibióticos intramuscular diariamente y un tratamiento de cloruro, el otro fue un tratamiento de agua con un jabón antiséptico y una pomada de antibióticos . . . en la pierna derecha ella

tuvo una herida de más o menos cuatro a cinco centímetros supurando"; que la herida era "Nueva, como de una semana o menos, cinco o seis días"; que "usualmente es a lo menos 48 horas cuando empieza a echar pus"; que para infectarse tenía más de 24 horas. En redirecto se le preguntó si la infección de la naturaleza de la de este caso puede desarrollarse en 24 horas. Contestó que "Sí, pues esa herida fue pues, de 24 horas"; que no se podía precisar con exactitud; que no podía decir con exactitud el tiempo que tarda en desarrollarse una infección. A preguntas de la representación legal de la recurrente, a continuación y finalmente, testificó que "Para mí esa herida fue de un tiempo, de unos días, según la historia que yo cogí cuando ella entró en el hospital; seis días antes había recibido un golpe."

■ El tribunal no tuvo ante sí un conflicto de prueba. Fue más bien una ausencia de prueba de la parte reclamante pues en contradistinción al testimonio de la recurrida, quien era la parte interesada, con respecto al accidente que tuvo y la lesión que le produjo, su perito médico testificó que la lesión en cuestión había sido recibida unos seis días antes. A nuestro juicio, el tribunal de instancia, al concluir que la lesión en cuestión fue producto del accidente alegado aquilató la prueba arbitrariamente, incurriendo por lo tanto en un error de derecho. *Fuertes* v. *Junta de Planificación*, 76 D.P.R. 644, 648 (1954); *Acosta* v. *Junta de Planificación*, 71 D.P.R. 578, 581 (1950).

2.—La conclusión del tribunal de instancia de que el accidente se debió a la culpa o negligencia de la recurrente al instalar en el centro de la acera un tensor interrumpiendo el paso de peatones, no está sostenida por la prueba.

■ Tomamos conocimiento judicial de que en las aceras de las calles en Puerto Rico existen instalados objetos tales como postes, señales de tránsito, cables, tensores, buzones, árboles, etc. Todos, por su propia apariencia, quedan al

alcance de la vista de las personas que transitan por las aceras observando un grado normal y razonable de cuidado. Las fotografías presentadas en evidencia por la propia recurrida demuestran que aunque el cable tensor en cuestión parece terminar en el centro de la acera, el mismo no interrumpía el paso de peatones. No existía necesidad alguna de advertir a los peatones de peligro alguno por razón del referido cable tensor, el cual se encuentra, según la fotografía previamente mencionada, de frente al nivel de la vista de los peatones. Además, la prueba demuestra que la recurrida no observó un grado normal y razonable de cuidado mientras caminaba por la acera. Admitió que "Yo no lo vi [el tensor] porque cuando yo iba viendo hacia la ebanistería, estaba mirando hacia ese lado." Las circunstancias de este caso son completamente distintas a las de *Ramos* v. *Carlo*, 85 D.P.R. 353 (1962); *Deynes* v. *Texaco (P.R.) Inc.*, 92 D.P.R. 222 (1965). La prueba de la propia recurrida justifica concluir que no observó un grado normal y razonable de cuidado dentro de las circunstancias concurrentes. *Acevedo* v. *E.L.A.*, 91 D.P.R. 796 (1965); *Hilker* v. *NP Dodge Building Company*, 168 N.W.2d 701 (Neb. 1969); *Frenchy* v. *City of Scottsbluff*, 138 N.W.2d 30 (Neb. 1965); *Hupfer* v. *City of North Platte*, 279 N.W. 168 (Neb. 1938); *Grail* v. *Risden*, 167 So.2d 610 (Fla. App. 1964); *Youngblood* v. *Newspaper Production Co.*, 158 So.2d 432 (La. App. 1963); *Young* v. *Price*, 388 P.2d 203 (Hawaii 1963).

Por lo tanto, *debe revocarse la sentencia dictada en este caso por el Tribunal Superior, Sala de Aguadilla, y desestimarse la demanda.*

El Juez Presidente, Señor Negrón Fernández, al igual que el Juez Asociado Señor Santana Becerra no intervino. El Juez Asociado Señor Hernández Matos disintió.