E. J. SPORTSWEAR, INC., demandante y recurrida, *v.* SUCN. MARTÍN MARTELL Y OTROS, demandados y recurrentes.

*Número:* R-73-346     *Resuelto:* 20 de febrero de 1975

*Wilfrido Meléndez Lugo,* abogado de los recurrentes; *Goldman, Antonetti, Barreto, Curbelo & Dávila,* abogados de la recurrida.

El Juez Presidente Señor Trías Monge emitió la opinión del Tribunal.

Las partes otorgaron un contrato de arrendamiento por el término de cinco años a partir de 1 de noviembre de 1963. El acuerdo disponía que la arrendataria no cedería o subarrendaría la propiedad sin el previo asentimiento por escrito de la arrendadora, el cual no se negaría irrazonablemente. El canon anual a pagar ascendía a $1.25 el pie cuadrado por los dos primeros meses en caso que la arrendataria no obtuviese exención contributiva bajo la Ley de Incentivos Industriales; $1.40 por el término restante de no exención; y $1.00 a partir de la fecha en que se le concediese tal privilegio a la arrendataria. La arrendataria obtuvo su exención el 30 de noviembre de 1964, decretándose efectiva la misma el 1 de enero del mismo año.

Para julio de 1965 la arrendataria recurrida le informó a la arrendadora que era su deseo abandonar el local arrendado y negociar su subarriendo con Rudes Decorators, Inc. El 1 de setiembre siguiente le escriben los abogados de la arrendataria a la arrendadora solicitando formalmente permiso para ceder dicho arrendamiento a Mardon Manufacturing, Inc., una compañía exenta bajo la Ley de Incentivos Industriales, cuyo presidente era George Rudes. El 24 de noviembre el abogado de la arrendadora contestó que su representada estaba en disposición de considerar cualquier cliente que se le recomendase con la condición de que el montante del alquiler y demás condiciones del contrato tenían que discutirse con la arrendadora. El 3 de diciembre de 1965 la arrendataria, reservando sus derechos a acción legal por las actuaciones pasadas, le informó a la arrendadora que tenía otro subarrendatario disponible, Plaza Provision, Inc. Ante la continuada negativa de la arrendadora a permitir el subarrendamiento, sin expresar otra razón que la ya expuesta, la arrendataria sometió el 4 de enero de 1966 el nombre de otra compañía dispuesta a subarrendar, Electronics Corporation of America. La arrendadora convino finalmente un nuevo contrato de arrendamiento con esta compañía por un plazo de cinco años también, pero a un canon mayor, tanto en caso de obtener o no exención industrial de contribuciones.

Por entender que la arrendadora se negó irrazonablemente desde el 1 de agosto de 1965 hasta el 31 de marzo de 1966 a permitir el subarriendo, la arrendataria reclamó ante el Tribunal Superior los cánones satisfechos durante dicho término, montantes a $14,758.00. Alegó también la arrendataria que la renta debió reducirse a $1.00 el pie cuadrado a partir de la fecha de efectividad de su exención y no desde la fecha en que se obtuvo, reclamando por tal concepto $11,114.25 pagados en exceso. El Tribunal Superior dictó sentencia a favor de la arrendataria, ordenando la restitución de ambas partidas, más

$1,000.00 retenidos en depósito por la arrendadora, $2,500.00 en concepto de honorarios de abogado y las costas y gastos.

El caso envuelve, como puede verse, dos cuestiones básicas. Deben precisarse, en primer término, las normas que rigen la concesión o denegatoria por el arrendador del permiso para subarrendar o ceder el arrendamiento en casos como el presente. En segundo lugar, debemos interpretar el contrato para determinar las fechas de vigencia de los diversos cánones.

■ El Art. 1440 de nuestro Código Civil, 31 L.P.R.A. sec. 4035, le permite al arrendatario subarrendar la propiedad en todo o en parte, sin perjuicio de su responsabilidad para con el arrendador, a menos que dicha facultad se prohíba expresamente. Aunque el Código guarda silencio sobre el particular y existe variedad de criterios entre los comentaristas, nuestra jurisprudencia equipara la cesión al subarriendo en estas situaciones, mas enteniéndose que tampoco se releva al cedente de sus obligaciones primitivas para con el arrendador. *Becerril* v. *Post*, 22 D.P.R. 732 (1915). Véanse: 2 De Diego, *Instituciones de Derecho Civil Español* 230; Espín, *Manual de Derecho Civil Español*, 2ª ed., vol. III, 1961, págs. 552–555.

Distinto al caso de nuestro Código Civil, que sigue en este sentido esencialmente las pautas del Código Civil Español (Art. 1550) y del Código Civil Francés (Art. 1717), la legislación de varios otros países civilistas prohíbe el subarriendo en ausencia de estipulación en contrario. Aun en tales situaciones, sin embargo, en que persiste la prohibición a secas se ha opinado que el dueño de la cosa arrendada no puede caprichosamente ponerle trabas o impedir el subarriendo. Scaevola, *Código Civil*, 1952, to. XXIV, Primera Parte, pág. 484.

■ Cuando se inserta en el convenio una cláusula restrictiva, prohibiendo ceder o subarrendar sin el consentimiento o agrado del arrendador, se han propuesto dos teorías de interpretación: la absolutista y la de la relatividad. La pri-

mera, reconoce el derecho absoluto que reclama la arrendadora recurrente en este caso. La segunda subordina el derecho del arrendador a razones justificables a juicio de los tribunales. La segunda cumple claramente en mejor forma los fines de la institución a que sirve. Cerrillo Quílez, "El Subarriendo de Locales de Negocio", 12 *Revista de Derecho Mercantil* 371, 387–388 (1951); Puig Peña, *Tratado de Derecho Civil Español*, to. IV, vol. II, 1951, pág. 214; 4 Colin y Capitant, *Curso Elemental de Derecho Civil*, 3ª ed., 1955, pág. 357, S. de 5 de dic. de 1947 (Esp.).

La transición de la teoría absolutista a la relativista se observa con mayor nitidez en el caso de la jurisprudencia francesa. La primera se limitó en el siglo XIX a los casos en que se insertaba una cláusula de consentimiento, pero si se trataba de una cláusula de agrado, la negativa a permitir el subarrendamiento tenía que justificarse, si necesario, judicialmente. Fuzier-Herman, *Code Civil Annoté*, t. 6, 9ª ed., pág. 30. La jurisprudencia posterior reconoce, especialmente en el arrendamiento de locales comerciales, que aun cuando se exija el consentimiento no condicionado del arrendador para subarrendar el permiso no puede rehusarse arbitrariamente. Fuzier-Herman, *supra*, 31.

La superioridad de la teoría relativista en la sociedad actual es evidente. El derecho a la propiedad no es irrestricto. Conlleva serias responsabilidades sociales. No sirve adecuadamente el interés público permitirle a un arrendador negarse caprichosamente o por motivos injustificados a permitir el subarrendamiento del bien concernido, máxime cuando el arrendatario primitivo continúa obligado bajo el contrato original. Del otro lado, el arrendador tiene derecho a un término razonable para investigar cuidadosamente la solidez económica y reputación del nuevo inquilino propuesto.

■ El caso de autos plantea en verdad una modalidad sencilla de la cláusula en cuestión. Las propias partes acordaron que el consentimiento de la arrendadora recurrente no

se negaría irrazonablemente. La imposición de trabas al subarriendo con el propósito, eventualmente logrado aquí, de obtener un contrato más provechoso para la arrendadora es una actuación claramente irrazonable. El problema se reduce por tanto a precisar la fecha en que la actuación de la arrendadora se convirtió en irrazonable en este caso.

Las partes en este caso sometieron la controversia entre ellos por estipulación. Ni de la prueba documental surge que el arrendador haya actuado irrazonablemente hasta la comunicación de su abogado de 24 de noviembre de 1965 en la que informa que está dispuesta a considerar cualquier cliente que la arrendataria le recomiende e impone la condición de un nuevo contrato por un término no menor de cinco (5) años, y exige la discusión del canon y otras condiciones del contrato. Esta actuación constituyó una violación del contrato entre las partes y una deformación de la figura del subarriendo bajo nuestro ordenamiento jurídico. No es fácil trazar la línea divisoria entre lo razonable y lo arbitrario, especialmente cuando los contratantes no le imparten contenido preciso—y a veces no es posible o deseable hacerlo—a expresiones generales de su voluntad. La conducta de la arrendadora en este caso rebasó de todos modos los límites de la razonabilidad, sin embargo, aun desde puntos de vista ya trascendidos sobre los derechos que asisten a los arrendadores en circunstancias análogas.

El planteamiento discutido hasta ahora es de índole novel en esta jurisdicción y tal parecería que también procede absolver a la arrendadora del pago de honorarios de abogado que se le impone en la sentencia. *Oliver* v. *Municipio de Bayamón*, 89 D.P.R. 442 (1963). La cláusula de subarriendo le imponía con toda claridad a la arrendadora, sin embargo, la obligación de no actuar irrazonablemente. Fue temeraria la arrendadora al actuar como actuó, sin diligencia, sin adelantar razón de peso alguna en abono de su pertinaz negativa a permitir el

arrendamiento, motivada a todas luces tan solo por su voluntad de obtener cánones más altos.

■ Respecto a la segunda cuestión que suscita el recurso, relativa a la fecha en que el canon más bajo de un dólar el pie cuadrado entraría en vigor, no procede tampoco la interpretación del contrato que ofrece la arrendadora recurrente. La interpretación de contratos y leyes no es un ejercicio escolástico a realizarse en el vacío, a distancia de la realidad a que obedecen. La explicación obvia de la reducción acordada, en caso que la arrendataria obtuviese exención contributiva es que entonces la arrendadora tenía derecho a su vez a no tributar por los cánones recibidos mientras gozase de exención su arrendataria. Ley Núm. 6 de 15 de diciembre de 1953, según enmendada, sec. 2(b)(1), 13 L.P.R.A. sec. 242(b)(1); Ley Núm. 57 de 13 de junio de 1963, sec. 2(d)(4), 13 L.P.R.A. sec. 252a(d)(4). Lo esencial en estas circunstancias es la fecha en que comienza la exención y no la de la concesión del decreto. De dársele la razón a la arrendadora recurrente, el efecto sería permitirle cobrar el canon más alto, libre de impuestos, desde el 1 de enero hasta el 30 de noviembre de 1964. Nos resistimos a adoptar interpretación tan peregrina en ausencia de indicación más fehaciente en el contrato de que tal fue la intención de las partes. Adviértase que la frase clave en la cláusula que nos concierne y que determina la fecha en que se comenzará a pagar el canon más bajo por motivo de la exención contributiva es: "Comenzando en la fecha que la exención contributiva sea concedida al arrendatario."(¹) Esa es precisamente la fecha crítica pues es de ahí en adelante que el dueño de la propiedad arrendada comienza a gozar de la exención contributiva en cuanto al ingreso proveniente de la renta. 13 L.P.R.A. sec. 252a(d)(4). Es por ello que el dueño pacta la reducción de la renta desde esa fecha. La fecha

---

(¹) El texto inglés es "Beginning on the date that tax exemption is granted to lessee." Cláusula 2(B).

de expedición del decreto propiamente no es determinante pues el propio decreto señala cual es la fecha de la efectividad de la exención. En este caso se estipuló que la fecha de efectividad del decreto lo es el 1ro. de enero de 1964. En adición al beneficio de exención contributiva sobre los ingresos, la Ley de Incentivo Industrial concede al dueño de la propiedad utilizada en la operación exenta, una exención sobre la contribución de la propiedad cuya vigencia es partir del primero de enero del año en que el negocio exento comience sus operaciones. Tanto la exención de la contribución sobre ingresos como la de la propiedad comenzaron el 1ro. de enero de 1964, y es desde esa fecha que el arrendador disfruta de ella. Evidentemente se produjeron las condiciones que beneficiaban al arrendador y que justificaban su aceptación de una renta menor.

En vista de ello procedería hacer el ajuste que corresponda entre la renta más alta pagada por el inquilino desde el 1ro. de enero de 1964 hasta el 31 de marzo de 1966. (²)

Por las razones expuestas *se modificará la sentencia recurrida solamente para ordenar la restitución a la arrendataria de los cánones satisfechos a partir del 24 de noviembre de 1965 hasta el 15 de enero de 1966, y así modificada, se confirma.*

---

(²) No surge de la estipulación ni de la prueba documental si al 31 de marzo de 1966 el negocio de la recurrida estaba operando y por tanto gozando de exención contributiva. En ausencia de prueba al respecto debe asumirse que estaba operando.