# 97 DTA 154

## TRIBUNAL DE CIRCUITO DE APELACIONES
## CIRCUITO REGIONAL IV DE AGUADILLA Y MAYAGUEZ

ELIZABETH SANCHEZ LOPEZ
Apelada

CARLOS PEREZ MENDEZ, SU ESPOSA ZAIDA SOLIVAN Y LA
SOCIEDAD LEGAL DE GANANCIALES COMPUESTA POR AMBOS;
INTEGRAND ASSURANCE COMPANY
Apelantes

v.

JULIO MEDINA VAZQUEZ

San Juan, Puerto Rico, a 30 de junio de 1997

Panel integrado por su Presidente, Juez Brau Ramírez,
el Juez Colón Birriel y la Juez Feliciano de Bonilla

Colón Birriel, Juez Ponente

## TEXTO COMPLETO DE LA SENTENCIA

### I

Los apelantes Carlos Pérez Méndez *("Pérez Méndez")*, su esposa Zaida Solivan, la Sociedad Legal de Gananciales compuesta por ambos *("Pérez Solivan")* y su aseguradora, la *"Integrand Assurance Company"* *("Integrand")*, nos solicitan que revoquemos una sentencia emitida por el Tribunal de Primera Instancia, Sub-sección de Distrito, Sala de Aguadilla, el 27 de octubre de 1995, archivada en autos copia de su notificación el 3 de noviembre de 1995. Mediante el dictamen en cuestión, el referido foro declaró con lugar la demanda que sobre daños y perjuicios presentara la apelada, Elizabeth Sánchez López *("Sánchez")*, contra los Pérez Solivan, la Integrand y el co-demandado, aquí apelado, Julio Medina Vázquez *("Medina")* y condenó a los Pérez Solivan y a la Integrand a pagar solidariamente a Sánchez la suma total de $8,000.00, las costas del proceso, la suma de $800.00 en concepto de honorarios de abogado, más el interés legal de 9.5% anual hasta el total pago del importe de la sentencia. El referido foro declaró, además con lugar una demanda contra tercero presentada por los Pérez Solivan y la Integrand contra Medina, condenando a este último a reembolsar a los primeros la totalidad de lo pagado por éstos a Sánchez.

### II

Se desprende de los autos que el 20 de agosto de 1992, aproximadamente a las 9:00 a.m., Sánchez se encontraba caminando por la parte posterior del Centro Comercial Punta Borínquen, Inc., *("Centro Comercial")* localizado en la Base Ramey de Aguadilla cuando sufrió un accidente al recibir un fuerte impacto en su frente con el filo de la tapa tracera *("lift-back")* de un vehículo de motor estacionado, propiedad de Medina, que se encontraba abierta hacia arriba. Para la fecha de la ocurrencia del accidente, Sánchez se desempeñaba como empleada de los talleres de costura de la fábrica *"Sugar*

*Shack, Inc."* *("Sugar Shack"),* localizada en el referido Centro Comercial. Específicamente, en cuanto a la forma en que ocurre el accidente, el foro de instancia determinó lo siguiente:

*"...[Sánchez] bajó, como es costumbre de las empleadas, por las escaleras ubicadas en la parte oeste de dicha fábrica a la hora del "break". Vio detenido el vehículo de motor Mazda del co-demandado Julio Medina, estacionado frente a dichas escaleras con la parte frontal hacia el área de los contadores bloqueando el acceso. [Sánchez] tuvo que doblar hacia su derecha caminando de forma paralela al vehículo y al girar hacia su izquierda por detrás del mismo, en ruta hacia la cafetería, recibió súbitamente en su frente el fuerte impacto con el filo de su tapa trasera "lift back" que se encontraba abierta."* (Enfasis nuestro).

Determinó, además, que:

*"Dicha tapa trasera no era visible para [Sánchez] por ser de cristal transparente y debido a que se encontraba abierta en forma horizontal como una superficie plana."*

Por motivo de dicho accidente, Sánchez sufrió un fuerte trauma en la cabeza consistente de una herida cortante y contundente en su frente, en la cual le tomaron aproximadamente cinco (5) puntos de sutura.

Originalmente, el 26 de marzo de 1993, Sánchez presentó demanda contra los Pérez Solivan, Medina y sus respectivas aseguradoras, sin mencionar sus nombres, por desconocerlos en ese momento. Posteriormente, el 30 de junio de 1993, Sánchez enmendó su demanda para identificar las respectivas aseguradoras co-demandadas. A estos fines, añadió como co-demandadas a la Cooperativa de Seguros Múltiples de P.R., aseguradora de Medina y a la Integrand, aseguradora de los Pérez Solivan.

En la referida demanda, Sánchez alegó, en síntesis, que el accidente se debió a la negligencia de Medina, quien había sido empleado por Pérez Méndez para realizar una instalación eléctrica en el Centro Comercial, al éste dejar la tapa trasera del vehículo en que transportaba sus herramientas y materiales abierta; esto es, abierta hacia arriba.

Los Pérez Solivan contestaron la demanda aceptando que Medina había sido contratado por Pérez Méndez para realizar una instalación eléctrica en el Centro Comercial, pero negaron que el accidente se hubiese debido a su negligencia. Alegaron que el accidente de Sánchez se debió a la negligencia de ésta al caminar de manera descuidada y solicitaron que la demanda fuera declarada sin lugar. Medina, por su parte, aceptó que había dejado la tapa trasera de su vehículo abierta y que Sánchez sufrió una herida.

Integrand aceptó la existencia y vigencia de un contrato de seguro para la fecha del accidente a favor de Pérez Méndez, con cubierta para el riesgo alegado en la demanda. La co-demandada Cooperativa de Seguros Múltiples de Puerto Rico, sin embargo, negó la existencia y vigencia de una póliza de seguro al momento del accidente, por razón de que Medina obtuvo la póliza con posterioridad a la ocurrencia del accidente. A esos fines, esta última, presentó una moción de desestimación debidamente fundamentada. El Tribunal de Primera Instancia dictó sentencia sumaria parcial desestimando la demanda en cuanto a la Cooperativa de Seguros Múltiples.

Los Pérez Solivan y la Integrand presentaron, a su vez, demanda de tercero contra Víctor Pérez, administrador del Centro Comercial, su esposa y la Sociedad de Gananciales compuesta por éstos, el Centro Comercial, y contra Iván Lugo, dueño de uno de los negocios para el cual Medina realizó trabajos de electricidad, y su esposa. Estos últimos contestaron la demanda y presentaron una moción de sentencia sumaria, la que fue declarada con lugar por entender el tribunal que no existía base o fundamento alguno para imponerles responsabilidad. ■

La vista del caso se ventiló el 26 de enero de 1995. Antes del comienzo de ésta, las partes estipularon como evidencia el informe de la policía, el original de la póliza de seguro de responsabilidad pública de la Integrand a favor de Pérez Méndez y el contenido del contrato de *"Electrical Security Service"* suscrito por su representante Pérez Méndez y Medina para reparar una

instalación eléctrica.

La prueba de Sánchez consistió de su testimonio y el del perito, médico de la familia, el Dr. Luis Aponte. Sánchez renunció a la testigo Dionisia Rivera, empleada de la fábrica *"Sugar Shack",* por ser su testimonio de carácter acumulativo, poniéndola a disposición de los Pérez Solivan y la Integrand, quienes no la utilizaron. Su prueba documental consistió de las certificaciones médicas del Dr. Aponte, fotografías del lugar del accidente donde se estaban realizando las instalaciones eléctricas, fotografías de la demandante y de la cicatriz de la herida en la frente, facturas de gastos de medicinas por un total de $82.56, y récord del Fondo del Seguro del Estado dando de alta definitiva a Sánchez.

La prueba de los Pérez Solivan consistió en fotografías del vehículo propiedad de Medina y del área del accidente.

Concluido el desfile de la prueba de Sánchez, los Pérez Solivan y la Integrand solicitaron mediante una moción de *"non suit"* la desestimación de la demanda por insuficiencia de prueba. El Tribunal de Primera Instancia, luego de escuchar los argumentos de las partes, pospuso la resolución de dicha moción e inquirió de todos los co-demandados si tenían prueba que ofrecer, a lo que éstos contestaron que no.

En base a las alegaciones de las partes, sus estipulaciones, la prueba documental y testifical presentada en el juicio, y el crédito que dicha prueba le mereció, el Tribunal de Primera Instancia, finalmente, determinó que Sánchez *"caminaba pendiente, con la debida circunspección mirando hacia el frente y por dónde iba"*; que el accidente se debió única y exclusivamente a la negligencia de Medina, al crear o permitir que se creara una condición irrazonablemente peligrosa constitutiva de un obstáculo u obstrucción, al estacionar su vehículo y dejar abierta la tapa trasera *"lift back"* del mismo colocada imprudentemente frente a las escaleras, localizadas en la parte oeste de la fábrica *"Sugar Shack",* por las que acostumbraban bajar las empleadas a la hora del *"break";* que tanto Medina como su patrono, Pérez Méndez, no tomaron las debidas precauciones para remediar dicha condición peligrosa y evitar la ocurrencia del accidente, ni ningún tipo de precauciones especiales debido a la naturaleza inherentemente peligrosa del trabajo eléctrico a ser realizado, incluyendo lo relativo a la transportación de herramientas y materiales.

Conforme a tales determinaciones y al derecho aplicable, el Tribunal de Primera Instancia procedió a emitir la sentencia de la cual apelan ante nos los Pérez Solivan y la Integrand, imputándole a dicho tribunal la comisión de los siguientes errores:

*"PRIMERO: Erró el Tribunal de Instancia al resolver que los apelantes responden por la negligencia de un contratista independiente o de un empleado que actuaba en el curso de su empleo ni en ocasión de sus funciones.*

*SEGUNDO: Erró el Tribunal de Instancia al resolver que la demandante no incurrió en negligencia que fue la única causa del accidente."*

## III

Comenzaremos nuestro análisis de las cuestiones planteadas con la discusión del *"SEGUNDO"* señalamiento de error, toda vez que es en éste dónde los Pérez Solivan y la Integrand cuestionan en sí la determinación que hace el tribunal para imputarle negligencia a Medina por el accidente ocurrido a Sánchez. Es decir, de determinarse que se cometió éste *"SEGUNDO"* señalamiento de error, ello haría innecesaria la discusión del *"Primero"*. Veamos.

En Puerto Rico, la responsabilidad civil derivada de actos u omisiones culposas o negligentes se rige por lo dispuesto en el Artículo 1802 del Código Civil, 31 L.P.R.A. sec. 5141. Para que prospere una causa de acción al amparo del referido artículo es necesario establecer y, de hecho, tienen que concurrir tres (3) elementos: (1) un daño, (2) una acción u omisión negligente, y (3) la correspondiente relación causal entre el daño y la acción u omisión negligente. *Vélez Rodríguez v. Amaro Cora,* ___ D.P.R.___ (1995), **95 J.T.S. 38**, a la pág. 756, y casos allí citados.

Bajo el Art. 1802, *supra,* rige la teoría de la causalidad adecuada, con arreglo a la cual no toda

condición sin la cual no se hubiere producido el daño es causa, sino la que ordinariamente lo produce según la experiencia general. Esto es, un daño parece ser el resultado natural y probable de un acto negligente si, después del suceso y mirando retroactivamente el acto que se alega ser negligente, tal daño aparece como consecuencia razonable y ordinaria del acto." *Toro Aponte v. Estado Libre Asociado*, ___ D.P.R. ___ (1997), **97 J.T.S. 18**, a la pág. 627.

Según el Art. 1802, *supra*, el acto ha de ser culposo o negligente. La culpa y la negligencia son caras de una misma moneda. La culpa requiere un acto positivo que causa un daño a otra persona; la negligencia supone una omisión que produce el daño. Ninguna de éstas requiere intención nociva por parte del actor causante del daño. *Toro Aponte v. Estado Libre Asociado, supra.*

La culpa o negligencia equivalen a la falta del debido cuidado, que a su vez consiste en no anticipar y prever las consecuencias racionales de un acto, o de la omisión del acto, que una persona prudente habría de prever en las mismas circunstancias. Es decir, la culpa o negligencia consisten en la omisión de la diligencia exigible mediante cuyo empleo podría haberse evitado el resultado dañoso. La diligencia exigible es la que cabe esperarse del ser humano medio, *"el buen padre de familia"*. Si el daño es previsible por éste hay responsabilidad; si no lo es, se trata, generalmente, de un caso fortuito. *Toro Aponte v. Estado Libre Asociado, supra; Tormos Arroyo v. Departamento de Instrucción Pública del E.L.A.*, ___ D.P.R. ___ (1996), **96 J.T.S. 34,** a la pág. 808.

La previsibilidad en sí, como elemento característico de la culpa o negligencia, consiste en la posibilidad de prever los resultados dañosos de la acción no previstos de modo efectivo; sin embargo, nadie está obligado a prever todos los posibles riesgos que puedan concebirse en una determinada situación, pues de lo contrario habría responsabilidad absoluta. El deber de previsión no se extiende a todo peligro imaginable que concebiblemente pueda amenazar la seguridad, sino de aquel que llevaría a una persona prudente a anticiparlo. *Vélez Rodríguez v. Amaro Cora, supra*, a la pág. 757; *Pacheco v. A.F.F.*, 112 D.P.R. 296, 300 (1982); *Salvá Matos v. Díaz Const. Corp.*, 95 D.P.R. 902, 906 (1968).

En el presente caso, el foro de instancia determinó que el accidente ocurrido a Sánchez se debió a la exclusiva negligencia de Medina al éste haber estacionado su vehículo en un lugar peligroso para los empleados de la fábrica *"Sugar Shack"* con la tapa trasera abierta *("lift-back"), "lo que no reportaba beneficio o utilidad alguna para los transeúntes, los impedidos o el público en general"*. Basó su dictamen en el Art, 1802, *supra*, y en los casos de *Ramos v. Carlo*, 85 D.P.R. 353 (1963); *Del Toro v. Gobierno de la Capital*, 93 D.P.R. 481 (1966); y *Oliver v. Municipio de Bayamón*, 89 D.P.R. 442 (1963). Consecuentemente impuso responsabilidad vicaria a los Pérez Méndez y a su aseguradora al amparo del Art. 1803 del Código Civil, 31 L.P.R.A. Por otro lado, entendió que los casos de *Vázquez v. A.F.F.*, 99 D.P.R. 547 (1971); *Acevedo v. E.L.A.*, 91 D.P.R. 796 (1965); *González Ivankovitch v. Las Amér. Prof. Ctr.*, 103 D.P.R. 89 (1974); y *Torres v. Municipio de Mayaguez,* 111 D.P.R. 158 (1981), citados por los Pérez Solivan y la Integrand, no eran de aplicación a la situación de autos sino *"claramente distinguibles"* por tratarse éstos de accidentes ocurridos a transeúntes con objetos fijos colocados y requeridos en las aceras *"por ley para beneficio o seguridad de los ciudadanos y el público en general"*. No estamos de acuerdo. Veamos porqué.

En primer lugar, en cuanto a la doctrina establecida en los casos de *Ramos v. Carlo, supra*; *Del Toro v. Gobierno de la Capital, supra*; y en *Oliver v. Municipio de Bayamón, supra; resolvemos que la misma no es de aplicación a los hechos del presente caso*. La doctrina establecida en los referidos casos se circunscribe a la responsabilidad de terceros y, en particular, de los Municipios de Puerto Rico de mantener las aceras y calles en condiciones de razonable seguridad para las personas o transeúntes que por ellas transitan de forma usual.

Distinto a lo ocurrido en los referidos casos, en el que nos ocupa, el accidente ocurre en la parte posterior de un Centro Comercial, específicamente en un área de carga y descarga de camiones pesados; es decir, no en una acera, calle o vía pública. (Véase parte del testimonio de Elizabeth Sánchez López, a las págs. 73 y 74). El hecho de que las empleadas de la fábrica *"Sugar Shack"* acostumbraran salir por la puerta trasera de la fábrica por ser ésta la manera más rápida o corta de llegar a la cafetería no convierte dicha área en una calle, acera o lugar por donde transiten peatones usualmente.

En segundo lugar, en cuanto a los casos citados por los Pérez Solivan y la Integrand, entendemos que éstos, al igual que los mencionados anteriormente, con excepción del caso de *González Ivankovitch v. Las Amér. Prof. Ctr., supra*, son distinguibles del presente caso por tratarse de accidentes ocurridos en las vías públicas y aceras donde, como expresáramos, existe un deber por parte de terceras personas y de los Municipios de velar porque éstas estén en condiciones seguras para que los peatones puedan transitar por las mismas. Ahora, en el caso de *González Ivankovich, supra*, similar a lo ocurrido en el caso de autos, el accidente ocurre cuando una persona que intenta atrechar a través de una pequeña franja de césped para llegar a una farmacia localizada en un edificio comercial, no se percató de una cadena ornamental que dividía el césped de la acera, precisamente, con el propósito de desalentar el paso o cruce de personas sobre la grama, y tropezó con la referida cadena resultando con un brazo fracturado. El foro de instancia, en una demanda contra el Centro Comercial, procedió a imponerle responsabilidad al referido centro condenándolo a resarcir al peatón, por los daños físicos y morales sufridos por éste, la cantidad de cinco mil dólares ($5,000.00). Nuestro Tribunal Supremo, luego de analizar la prueba, en particular varias fotografías admitidas en evidencia, revocó la sentencia del foro de instancia expresando lo siguiente:

"*...Las personas que se mueven por las vías públicas han de observar la precaución y el cuidado que se espera de una persona de regular inteligencia para evitar colisiones y caídas; y la precaución debe redoblarse cuando se cambia de una zona a otra de mayor y más complejo desarrollo urbano.*" (Enfasis nuestro). *González Ivankovitch v. Las Amér. Prof. Ctr., supra*, a la pág. 91.

Conforme a todo lo anterior, las doctrinas de causalidad y previsibilidad antes enunciadas y luego de analizada la prueba presentada ante el foro de instancia, tanto testifical como documental --en particular las fotografías admitidas en evidencia--, forzoso es concluir que la determinación del foro de instancia imputándole negligencia exclusiva y absoluta a Medina no puede prevalecer.

En el presente caso, el accidente ocurre a plena luz del día, esto es, las 9:00 a.m. El vehículo de Medina no se encontraba en una acera, en una calle, o tan siquiera en un estacionamiento público, sino en un área de carga y descarga en la parte posterior de un *"shopping center"*. Tampoco se hallaba dicho vehículo en movimiento, sino debidamente estacionado en la referida área de carga y descarga. Admite Sánchez haber visto el referido vehículo estacionado completamente mientras iba caminando. (Véase Transcripción del testimonio de ésta a la pág. 42). El foro de instancia entendió, sin embargo, que dicho vehículo bloqueba el paso de las empleadas de la fábrica *"Sugar Shack"* y que ello lo hacía peligroso para éstas. No estamos de acuerdo.

En primer lugar, según testificara Sánchez, la salida por donde salió el día del accidente y por donde, según ésta, *"acostumbraban"* salir otros empleados de dicha fábrica a la hora del *"break"*, no era la principal sino una por la cual se le permitía a los empleados salir, ya que aparentemente dicha ruta constituía una forma más corta y rápida para llegar a la cafetería. (Véase Transcripción de la prueba a la págs. 69 y 70). No se desprende de las fotografías admitidas en evidencia, rótulo o aviso alguno a los efectos de que los empleados de la fábrica *"Sugar Shack"* acostumbraran utilizar la referida salida o alguna señal o signo aparente de donde pudiere inferirse tal cosa. Ahora, de entenderse que ello fuera previsible, esto es, que empleados de dicha fábrica utilizaran dicha salida, ciertamente no era previsible que éstos o alguno de éstos fuera a tener un accidente con un vehículo debidamente estacionado, dentro de las circunstancias allí presentes, en la referida área de carga y descarga.

En segundo lugar, un vehículo estacionado en un área de carga y descarga, por lo general, no constituye una situación peligrosa. Aunque es cierto que, en el presente caso, el vehículo de Medina tenía la parte trasera abierta hacia arriba, ello, por lo general, tampoco constituye una situación peligrosa. Es decir, un vehículo estacionado con el baúl abierto o tapa trasera *("lift back")* abierta, usualmente y en la mayoría de los casos, no constituye algo peligroso o crea una situación peligrosa. Por otro lado, en cuanto a peligrosidad se refiere, aunque el trabajo eléctrico realizado por Medina podría catalogarse como uno inherentemente peligroso, el mismo nada tuvo que ver con el accidente ocurrido.

En cuanto a la conclusión del foro de instancia a los efectos de que la tapa trasera del vehículo no era visible por ser la misma una superficie plana de cristal transparente y estar abierta de forma

horizontal, la misma no está sostenida por la evidencia fotográfica admitida. Según se desprende de dichas fotografías, la tapa trasera, aunque de cristal en el medio, estaba rodeada de un marco sucio de aluminio de casi media pulgada de ancho, el cual era notorio a simple vista. Nótese, además, que. según Sánchez el sol se reflejaba en la tapa. Siendo ello así, si Sánchez no vio la tapa, por lo menos debió haber visto el reflejo de la misma, pero aún así continuó caminando hacia el frente hasta tropezar con ésta. (Véase Transcripción a la pág. 68).

En fin, resolvemos, como expresáramos antes, que el hecho de que los empleados de la fábrica *"Sugar Shack"* acostumbraran utilizar dicha salida o ruta hacia la cafetería no convierte dicho tramo o ruta en una acera, calle o pasillo y que tratándose de una área de carga y descarga de camiones --área inherentemente peligrosa-- le correspondía a Sánchez redoblar su nivel de precaución para evitar la colisión en cuestión, cosa que aparentemente no hizo. Esto es, lo ocurrido a Sánchez, aunque lamentable, no fue más que un accidente fortuito.

Habiéndose concluido que el Tribunal de Primera Instancia incurrió en el segundo señalamiento de error, es innecesario que pasemos a considerar el primero.

Por los fundamentos expresados, se revoca la Opinión y sentencia Enmendada emitida por el Tribunal de Primera Instancia, Sub-sección de Distrito, Sala de Aguadilla, el 27 de octubre de 1995, imponiéndole responsabilidad a Medina y por consiguiente a los Pérez Solivan y a la Integrand.

Lo pronunció el Tribunal y lo certifica la señora Secretaria General.

Aída Ileana Oquendo Graulau
Secretaria General

## ESCOLIO 97 DTA 154

1. Véase nota al calce Núm. 1 de la Opinión y Sentencia Enmendada dictada el 27 de octubre de 1995 por el Tribunal de Primera Instancia; Apéndice del Escrito de Apelación de los apelantes a las págs. 87-97. .